MILLER ET AL., APPELLANTS, *v.*
WIKEL MANUFACTURING COMPANY, INC. ET AL., APPELLEES.

[Cite as Miller *v.* Wikel Mfg. Co. (1989), 46 Ohio St. 3d 76.]

(No. 88-1297—Submitted May 17, 1989—Decided October 11, 1989.)

*Murray & Murray Co., L.P.A.,*
*Dennis E. Murray, Sr.* and *Kirk J.*
*Delli Bovi,* for appellants.
*Lucal & McGookey* and *James E.*
*McGookey,* for appellees.

*Per Curiam.*

## I

The Millers claim that Wikel Mfg. and its president, David Wikel, began breaching the distributorship contract in 1982 by making direct sales to the Millers' customers in Michigan; imposing price schedules on the Millers; and, ultimately, by wrongfully terminating the Millers' distributorship contract. The jury specifically found that Wikel Mfg. had breached its contract with the Millers and that the Millers had suffered $1.5 million in damages as a result. The trial court entered judgment for plaintiffs on that count and in that amount. The court of appeals reversed this judgment on two grounds: first, that the Millers had waived their right to complain about Wikel Mfg.'s direct sales by continuing their relationship with Wikel Mfg. with knowledge of such direct sales; and second, that the agreement under which the parties operated was terminable at will by either party.

It was proven at trial that the Millers had been aware of direct sales by Wikel Mfg. in Michigan since 1971 and that the Millers had accepted com-

missions on these sales. Such sales were in contravention of the exclusive distributorship contract. The court of appeals reasoned that the Millers' election to continue as Wikel Mfg.'s distributor, notwithstanding Wikel Mfg.'s actions, constituted a waiver of their rights under the agreement, and thus that they were estopped from asserting a breach-of-contract claim on this basis.

Waiver and estoppel are affirmative defenses under Civ. R. 8(C), and thus must be affirmatively set forth. The record shows that the defendants never asserted waiver or estoppel in their answer, nor did they raise these defenses in any manner during the proceedings. It is axiomatic that "[i]ssues not raised in the lower court and not there tried and which are completely inconsistent with and contrary to the theory upon which appellants proceeded below cannot be raised for the first time on review." *Republic Steel Corp.* v. *Bd. of Revision of Cuyahoga Cty.* (1963), 175 Ohio St. 179, 23 O.O. 2d 462, 192 N.E. 2d 47, syllabus. Therefore, we hold that it was error for the court of appeals to have *sua sponte* raised waiver and estoppel on the defendants' behalf and to have reversed the judgment in plaintiffs' favor on that basis.

The second ground on which reversal of this count rested was the finding by the appellate court that the parties had modified their contract and that the new arrangement was terminable at the will of either party. We agree that a distributorship agreement with no express provision as to duration is generally terminable at will by either party after a reasonable duration and on reasonable notice. See, *e.g., Excello Wine Co.* v. *Monsieur Henri Wines, Ltd.* (S.D. Ohio 1979), 474 F. Supp. 203, 208 (applying Ohio law).

At trial the jury was given two in-structions pertinent to the issue of the contract's duration. It was first charged:

"There has been no evidence of a definite termination date of the original contract. I instruct you that when a continuing contract such as this has no specific terminal date it may be terminated by either party after a reasonable time and after reasonable notice of intention to terminate."

The jury was subsequently charged:

"*If you find* that the distributorship agreement has no expressed term as to its duration it is terminable without cause after a reasonable period of existence and upon reasonable notice." (Emphasis added.)

The first jury charge stated that there had been no evidence of a specific termination date of the distributorship contract. The proper rule of law was given regarding an oral contract with no specific termination date, *i.e.,* that such contracts are generally terminable by either party upon reasonable notice. However, while the agreement between Wikel Mfg. and the Millers had no specific termination date, the agreement's duration and the parties' rights of termination were apparently provided for. The testimony of both the Millers and of an officer of Wikel Mfg. revealed that the agreement was to continue as long as Wikel Mfg. remained in the business of manufacturing the products and equipment, and the Millers stated that they alone had the right to terminate the arrangement. Since the record reflects some dispute on this matter, the second jury charge left to the jury the factual issues of whether this contract had an expressed duration and, as a result, whether it was terminable at the will of either party. The jury presumably found that the contract was not mutually terminable, as the jury's

answers to interrogatories reflect a finding that Wikel Mfg. had indeed breached the contract. Wikel Mfg. made no objection to the second charge that left these issues to the jury. Having failed to object to this instruction, Wikel Mfg. waived its right to appeal the court's submission of these issues to the jury. Thus, the court of appeals erred in finding that the contract was terminable at the will of Wikel Mfg.

Since we reject both grounds on which the court of appeals reversed the judgment for plaintiffs on their breach-of-contract claim, we must conclude that such judgment was proper. We are not inclined to set aside the jury's finding with respect to liability or damages. Accordingly, the jury's award to the Millers for Wikel Mfg.'s breach of contract must be reinstated.

## II

The Millers also asserted a claim against David Wikel individually for tortious interference with contract. Throughout the business relationship between the Millers and Wikel Mfg., David Wikel was the president and majority stockholder of Wikel Mfg. Therefore, it would appear that any activities he was involved in were on behalf of Wikel Mfg. and could not be assessed as individual in nature. Personal liability of Wikel could result only where his actions benefited him solely in a personal capacity.

The only instance that suggests that David Wikel acted solely to benefit himself centered on the sale of a Florida business which he personally owned. The buyer of Wikel's Florida business was one A. Michael Ford. As it happened, Ford's other business activities included the purchase of Wikel Mfg. products from the Millers in Michigan. Plaintiffs argue that Wikel, pursuant to the sale of his Florida business to Ford, agreed that *he,*

Wikel, would require that the Millers lower their prices on the products they sold Ford. At trial, however, this assertion was specifically denied by Ford, who testified that the Millers' lowering of their prices in Michigan was not part of the purchase agreement between himself and David Wikel.

The record is devoid of any other evidence supporting personal liability of David Wikel. Thus, there is no basis for the jury's finding against Wikel on this claim. Accordingly, the appellate court's decision reversing Wikel's individual liability is affirmed.

## III

In their fourth proposition of law appellants argue that the trial court erred in denying their motion for prejudgment interest pursuant to R.C. 1343.03.

R.C. 1343.03 provides in pertinent part:

"(A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

"* * *

"(C) Interest on a judgment, decree, or order for the payment of

money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

Appellants initially sought prejudgment interest under both R.C. 1343.03(A) and (C),[1] but before this court they have limited their argument to their right to interest from Wikel Mfg. on their breach-of-contract claim. We find this argument to be without merit.

Prejudgment interest under R.C. 1343.03(A) is awarded from the time the amount at issue becomes "due and payable." Appellants argue that damages for breach of contract are due and payable when they are "ascer-tainable by computation or by reasonably certain calculations with reference to existing market values and recognized valuation methods." The trial court essentially rejected the argument that the damages were reasonably ascertainable in this case, and we find nothing in the record to cause us to disturb this holding. Accordingly, we affirm the denial of prejudgment interest.

*Judgment reversed in part and affirmed in part.*

MOYER, C.J., WRIGHT, H. BROWN and EVANS, JJ., concur.

SWEENEY, HOLMES and DOUGLAS, JJ., separately concur in part and dissent in part.

JOHN R. EVANS, J., of the Third Appellate District, sitting for RESNICK, J.

HOLMES, J., concurring in part and dissenting in part. I would affirm the court of appeals in all respects.

---

[1] In their original motion appellants relied on R.C. 1343.03(C) and asserted that they "offered to settle for four hundred thousand dollars ($400,000.00) and the defendants refused to consider any settlement amount." Appellees responded by arguing that R.C. 1343.03(C) provides for interest on judgments arising from "tortious conduct," and thus that this provision is inapplicable because "the instant action is one based on contract * * *." Appellants subsequently modified their request, seeking prejudgment interest under R.C. 1343.03(C) only against David Wikel individually, on their tortious-interference-with-contract claim against him, and interest under R.C. 1343.03(A) against Wikel Mfg., on their breach-of-contract claim. Following a hearing the trial court overruled appellants' motion. On appeal appellants continued to seek prejudgment interest from both Wikel Mfg. and David Wikel, under R.C. 1343.03(A) and (C), respectively. The court of appeals held that these arguments were "rendered moot" by its reversal of the judgment in favor of appellants. The quest for prejudgment interest from David Wikel individually under R.C. 1343.03(C) appears to have been abandoned by appellants, as their brief filed with this court addresses only their right to interest from Wikel Mfg. under R.C. 1343.03 (A). Accordingly, we express no opinion on their right to interest on their judgment against Wikel individually. However, since we have affirmed the reversal of this judgment in Part II, *supra,* the question of interest on that judgment would be moot in any event.

Douglas, J., concurring in part and dissenting in part. I view this case as being yet another attack on the jury system. The more we countenance, in any way, the abrogation of the right of trial by jury, the more we can expect to see both legislative and judicial attempts at erosion of the sacred right.

To make my point, I cite to just three recent examples. There are many more, including the case at bar, which clearly make the point.

It is now argued that the General Assembly by the enactment of R.C. 4121.80(D) has removed the right of trial by jury in cases where it is alleged that an intentional tort occurred in the workplace during the course of and arising from an employee's employment. While I do not agree with this interpretation for a number of reasons (including the use of the term "directed *verdict*" in R.C. 4121.80[C][2], *i.e.*, only a jury renders a "verdict," and my dissenting opinion in *Bertolino* v. *Indus. Comm.* [1989], 43 Ohio St. 3d 44, 538 N.E. 2d 1040), it is clear, nevertheless, that R.C. 4121.80(D) does place in the hands of the Industrial Commission the right to determine what amount of damages, if any, should be awarded in such cases. When a case involving damages is tried to a jury, it has always been one of the functions of the jury to determine the right to and the amount of any damages to be awarded. See, also, R.C. 2315.18.

R.C. 2315.21(C)(2) is yet another example. That section provides that in a tort action if a defendant is found to be liable for punitive or exemplary damages, "* * * the amount of those damages shall be determined by the court." Again, the right to trial by jury has been abridged.

Likewise, in our recent case of *Villella* v. *Waikem Motors, Inc.* (1989),

45 Ohio St. 3d 36, 543 N.E. 2d 464, a unanimous jury, an excellent trial judge and a panel of three (unanimous) appellate judges all found a punitive damages award to plaintiff to be appropriate under the circumstances of that case. Nevertheless, the defendant appealed to this court, contending that the verdict of the jury should be overturned. We accepted jurisdiction of the case and by the narrow vote of four to three, the verdict of the jury and the judgments of the trial judge and the judges of the court of appeals were upheld. Notwithstanding that it was the jury which heard all the evidence, observed the demeanor of the witnesses, and made a determination which was permitted to stand by a trial judge (who also was in the courtroom during the trial), and then subsequently affirmed by a court of appeals, the sanctity of the jury verdict was preserved only by the slimmest margin of one vote in this court.

It would be well for us to remember that the right to trial by jury is one of the touchstones of the founding of our country. The right precedes by many years even the rights of free speech, free exercise of religion, freedom of the press and freedom from self-incrimination.

It is no accident that the Seventh Amendment to the United States Constitution provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved * * *." It is no accident that Section 5, Article I of the Ohio Constitution provides: "The right of trial by jury shall be inviolate * * *."

The long and storied history of the right, in America, to trial by jury dates as far back as 1606 when certain matters in Virginia were tried before juries. Massachusetts, New Jersey and Pennsylvania followed with documents

providing for trial by jury. The First Continental Congress declared in 1774 that the colonists were entitled to be tried by a jury of peers of the vicinage—and John Hancock and his brave friends, in signing the Declaration of Independence thereby absolving the colonies from all allegiance to the British Crown, set forth, as one of their grievances, the "* * * depriving us in many cases, of benefits of Trial by Jury * * *."

The right to trial by jury was provided for in state constitutions, both before and after the drafting and adoption of the federal Constitution. The fact that the original federal Constitution did not contain a provision regarding the right to trial by jury caused persons like Thomas Jefferson and Patrick Henry to indicate they would oppose ratification. Alexander Hamilton attempted to answer the criticism in Federalist No. 83, but Jefferson supported ratification only when James Madison agreed to introduce in the First Congress a Bill of Rights including a provision or amendment for trial by jury. It is not surprising that Jefferson expressed his feelings on the subject by saying: "I consider trial by jury as the only anchor ever yet imagined by man by which a government can be held to the principles of the Constitution."[2]

Yet, despite the foregoing and much more that could be cited, the civil jury trial right continues to be under attack. Day in and day out, inroads are attempted to weaken this basic institution of American democracy. The partial setting aside of the jury verdict in this case is the latest example.

I concur in Part I of the majority opinion. I applaud the majority for

---

[2] Three writings of Thomas Jefferson (Washington Ed.) 1.

recognizing that the jury verdict against Wikel Mfg. was rendered after the hearing of evidence, proper instruction and appropriate deliberation. Not to have reinstated that verdict would have, simply, led to the inevitable conclusion that the right to a trial by jury is really just an illusion—something nice to which we should pay lip service but nothing really of substance. Such a conclusion would have ignored history and the sacredness of the right.

I must dissent, however, from the majority decision not to reinstate the verdict of the jury rendered against David Wikel. The majority overlooks the facts upon which the jury returned a verdict against David Wikel, individually.

The jury heard Michael Ford testify that he had purchased a Florida business from David Wikel and that David owned the Florida business. From a reading of the entire transcript, and especially the testimony of Ford, the jury could reasonably find that David, as part of the sale and purchase of the Florida business, would personally require the Millers to lower their prices in Michigan—a state where Ford had a very substantial business operation which was directly affected by the prices being charged Ford in Michigan by the Millers' company. The jury, upon hearing this evidence, determined that David had interfered with the Millers' relationship with their largest customer, Ford, and in doing so, David was solely and individually benefited. In fact, in response to an interrogatory which asked, "* * * [D]id David C. Wikel tortiously interfere with the contractual relationship between the plaintiffs—the Millers and Wikel Manufacturing," the jury found that David had, individually and without privilege to do so, interfered

with the Millers' contractual relationship with Wikel Mfg.

How does the majority avoid this evidence and the resultant jury verdict based upon the evidence the jury heard? The majority simply says that "* * * [a]t trial, however, this assertion was specifically denied by Ford, who testified that the Millers' lowering of their prices in Michigan was not part of the purchase agreement between himself and David Wikel."

What the majority has done is the taking out of context of one small portion of Ford's testimony. The jury heard *all* the testimony. In addition, a reading of the transcript in *full* context supports the jury's finding.

But even if this were not the case, it would make no difference. The Millers alleged individual tortious interference by David Wikel. David denied the allegation. It appears the evidence was conflicting, giving the best of it to David. The jury heard all the evidence and saw all the witnesses. After deliberating, it found the conflicting evidence (if in fact the evidence was conflicting) to favor the Millers. This is exactly the province of the jury. This court, see R.C. 2503.43, need not weigh the evidence. The majority admits that evidence favoring the Millers does exist by its statement that "[t]he record is devoid of *any other* evidence supporting personal liability of David Wikel. * * *" (Emphasis added.)

The jury saw, the jury heard and the jury decided! Its verdict regarding the personal liability of David Wikel should be reinstated in conformance with the law, history, and the best traditions of our system of law and justice.

Accordingly, I respectfully concur in part and dissent in part.

SWEENEY, J., concurs in the foregoing opinion.

