THOMAS STEEL, INC., Appellant,

v.

WILSON BENNETT, INC. et al., Appellees.

[Cite as *Thomas Steel, Inc. v. Wilson Bennett, Inc.* (1998), 127 Ohio App.3d 96.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72071.

Decided March 30, 1998.

*Arter & Hadden, Barry J. Miller, John F. Myers* and *Jean Kerr Korman,* for appellant.

*Steven L. Yashnik,* for appellee Wilson Bennett, Inc.

*Alan G. Segedy,* for appellee Safeco Insurance Company of America.

---

JAMES M. PORTER, Presiding Judge.

Plaintiff-appellant Thomas Steel, Inc. appeals from summary judgment entered in favor of defendants-appellees Wilson Bennett, Inc. and Safeco Insurance Company of America on their payment bond arising out of certain subcontract work performed by plaintiff at Cleveland Hopkins Airport. Plaintiff Thomas Steel claims that the trial court erred in barring its action by applying the incorrect statute of limitations and in not recognizing plaintiff's unjust enrichment claims. We find no error and affirm.

On June 9, 1992, Wilson Bennett, as general contractor, entered into a contract with the city of Cleveland to install certain improvements at Cleveland Hopkins International Airport. The project included construction of an Aircraft Rescue and Fire Fighters Station ("ARFF") and Relocation of Electric Vault ("EV–9") for the lump sum contract price of $6,841,000.

The contract obliged Wilson Bennett to obtain a payment and performance bond in the form set forth in C.C.O. ("Cleveland Codified Ordinance") 185.14.

Wilson Bennett obtained the required bond from Safeco. The bond provided that Wilson Bennett as principal and Safeco as surety would jointly and severally indemnify and save harmless the city of Cleveland from all liens, charges, claims, demands, loss, costs, and damages, and "shall pay all lawful claims of subcontractors, materialmen and laborers for labor performed, and materials furnished" in performing the contract on the project.

On September 17, 1992, Wilson Bennett entered into a purchase order subcontract with Simms Steel Service Company to provide the structural steel and labor to erect the ARFF building and EV–9 building for the contract price of $385,000, subject to a ten-percent retainage.

Simms Steel's subcontract with Wilson Bennett was based on a purchase order agreement, dated May 12, 1992, with plaintiff Thomas Steel to supply the structural steel and other accessories needed to frame the ARFF building and EV–9 for the contract price of $207,000. Thomas Steel supplied the steel on the job and submitted periodic invoices to Simms Steel, totaling $208,450. Simms Steel withheld ten percent of the total contract price or $20,845 as retainage. Thomas Steel completed its work and sent its final invoice to Simms Steel, dated April 12, 1993.

Despite Thomas Steel's repeated demands upon completion of the project, Simms Steel and Wilson Bennett failed and refused to pay Thomas Steel the outstanding retainage of $20,845. Correspondence in the record suggests that Simms Steel was in bankruptcy. By letter dated April 3, 1995, Thomas Steel's counsel sent Wilson Bennett formal written notice that Thomas Steel had not been paid in full by Simms Steel. Thomas Steel advised Wilson Bennett that when the city issued final payment to Wilson Bennett, Thomas Steel claimed any money due Simms Steel.

On June 30, 1995, Wilson Bennett submitted its final request for payment to the city and stated under oath that all laborers, materialmen and/or subcontractors had been paid in full despite the notice of nonpayment from Thomas Steel.

On October 18, 1995, prior to the city's final payment to Wilson Bennett, counsel for Thomas Steel gave formal written notice to Safeco of its $20,845 bond claim. On December 15, 1995, the city determined that the project was completed and made a final payment of $40,300 to Wilson Bennett.

On January 5, 1996, Wilson Bennett's counsel sent Thomas Steel formal written notice that Wilson Bennett and Safeco denied Thomas Steel's bond claim under the statute of limitations set forth in R.C. 153.56, since the project was accepted on December 14, 1993 and Thomas Steel had not complied with the time limitations in the statute.

On April 4, 1996, Thomas Steel commenced this action on the bond against Wilson Bennett and Safeco for $20,850. After discovery, all parties filed motions for summary judgment. The trial court granted summary judgment for defendants on statute-of-limitations grounds and denied Thomas Steel's motion for summary judgment. This timely appeal ensued.

We will address plaintiff's assignments of error in the order presented and together where the subject matter is appropriate.

"I. The trial court erred when it granted defendants–appellees' motion for summary judgment and dismissed plaintiff–appellant's complaint as time barred because the general bond statute, Ohio Revised Code § 153.56, is inapplicable to a bond furnished pursuant to § 185.14 of the Codified Ordinances of the city of Cleveland.

"II. The trial court erred when it granted defendants–appellees' motion for summary judgment and dismissed plaintiff–appellant's complaint as time-barred because plaintiff–appellant filed suit within one year from the date of acceptance of the public improvement project by the city of Cleveland even if R.C. § 153.56 applies to defendants–appellees' bond claim, which it does not."

Under Civ.R. 56, summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274.

It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

■ However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra,* at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a

genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio modified the summary judgment standard as was applied under *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Presently, under the new standard, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or a material element of the nonmoving party's claim." *Dresher* at 296, 662 N.E.2d at 276.

This court reviews the lower court's granting of summary judgment *de novo. Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination."). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

Thomas Steel contends that the trial court erred in finding that its action was time-barred by the provisions of R.C. 153.56; that since the city is a charter municipality, R.C. 153.56 was inapplicable to a bond furnished pursuant to C.C.O. 185.14; that limitations contained in R.C. 2305.07 (six years on oral contracts) or R.C. 2305.12 (ten years on official bonds) should have been applied; and that Thomas Steel met the limitations requirements of R.C. 153.56. We find these arguments are without merit.

The bond in question was a payment and performance bond in the form required by C.C.O. 185.14. However, the parties agree that there is no Cleveland ordinance or charter provision specifying time for suit on the bond. For that reason, the defendants argued that the bond was furnished to a "political subdivision" for a "public improvement" as provided in R.C. 153.54, and, thus, subject to the statute of limitations periods set forth in R.C. 153.56. R.C. 153.54 provides in relevant part:

"(A) Each person bidding for a contract with the state or any political subdivision, district, institution, or other agency thereof, excluding therefrom the department of transportation, for any public improvement shall file with his bid a bid guaranty in the form of either:

"(1) A bond in accordance with division (B) of this section for the full amount of the bid;

"(2) A certified check, cashier's check, or letter of credit pursuant to Chapter 1305 of the Revised Code, in accordance with division (C) of this section. * * *

"* * *

"(C) * * * If the bidder enters into the contract, the bidder shall, at the time he enters into the contract, file a bond for the amount of the contract to indemnify the state, political subdivision, district, institution, or agency against all damage suffered by failure to perform the contract according to its provisions and in accordance with the plans, details, specifications, and bills of material therefor and to pay all lawful claims of subcontractors, materialmen, and laborers for labor performed or material furnished in carrying forward, performing, or completing the contract; and agree and assent that this undertaking is for the benefit of any subcontractor, materialman, or laborer having a just claim, as well as for the state, political subdivision, district, institution, or agency.

"* * *

"(J) For the purposes of this section and sections 153.56, 153.57, and 153.571 of the Revised Code 'public improvement' * * * [has] the same meaning as section 1311.25 of the Revised Code."

R.C. 1311.25 states that " 'Public improvement' means any construction, reconstruction, improvement, enlargement, alteration, demolition or repair of a building, highway, * * * and any other structure or work of any nature by a public authority."

██ A notice of claim and an action under the payment portion of the bond asserted by a subcontractor, materialman, or laborer, alleging that money is due for labor or work performed or material furnished in a public improvement contract must be timely presented within the limitations periods set forth in R.C. 153.56. That section provides as follows:

"Any person to whom any money is due for labor or work performed or material furnished in a public improvement as provided in section 153.54 of the Revised Code, at any time after performing the labor or work or furnishing the materials, but not later than ninety days after the acceptance of the public improvement by the duly authorized board or officer, shall furnish the sureties on the bond, a statement of the amount due the person.

"A suit shall not be brought against sureties on the bond until after sixty days after the furnishing of the statement described in this section. If the indebtedness is not paid in full at the expiration of that sixty days, the person may bring an action in his own name upon the bond, as provided in section 2307.06 and

2307.07 of the Revised Code, that action to be commenced, notwithstanding section 2305.12 of the Revised Code, not later than one year from the date of acceptance of the public improvement."

■ Thus, R.C. 153.56 requires that a subcontractor, like Thomas Steel, who was owed money for work or materials furnished on a public improvement, must furnish the sureties on the bond with a statement of the amount due "not later than ninety days after the acceptance of the public improvement by the duly authorized board or officer." Any suit on the bond must be commenced "not later than one year from the date of acceptance of the public improvement." Compliance with these time limitations is "jurisdictional in character." *Atkinson v. Orr–Ault Const. Co.* (1931), 124 Ohio St. 100, 103, 177 N.E. 40, 41.

■ Thomas Steel completed its subcontract and submitted its final invoice to Simms Steel on April 12, 1993. The date of acceptance of the subject public improvement on which Thomas Steel supplied materials was December 14, 1993. Thomas Steel admitted in its response to Safeco's Request for Admission No. 1 that "the 'Date of Acceptance' noted below, on the 'Statement of Work Accepted' dated March 4, 1994 was December 14, 1993 * * *." This Statement of Work Accepted identified the improvement accepted as "Relocation of Aircraft and Firefighting Station and Electrical Vault at Cleveland Hopkins International Airport, Phase I (ARFF Building) and III (Site Work)." The statement was signed by the Airport Commissioner and the Director of Port Control. Thomas Steel did not furnish Safeco with a statement of the amount due it until at least October 18, 1995. This was approximately twenty-two months after acceptance, rather than within the ninety-day time limit. Thomas Steel also did not file this action until April 4, 1996, over twenty-seven months after the acceptance, rather than within the one-year limitation period prescribed by R.C. 153.56. Therefore, Thomas Steel failed to meet both of the time requirements set forth in R.C. 153.56 for suit on the bond.

■ Defendant contends that the "date of acceptance" of the public improvement did not occur until December 15, 1995, when the city made final payment to Wilson Bennett and therefore its April 4, 1996 suit was within the one-year limitation of R.C. 153.56. This argument is not well taken. As previously noted, Thomas Steel completed its work and submitted its final invoice on April 12, 1993; the "public improvement" on which it furnished the steel was accepted on December 14, 1993. The legislative purpose of requiring relatively prompt notice of nonpayment to the sureties would not be served by allowing postponement of the notice until the ultimate end of a major project, in this case, over two years after the subcontractor had completed its work.

■ Nevertheless, Thomas Steel vehemently argues that the bond was furnished pursuant to C.C.O. 185.14 and that since Cleveland is a charter or home rule municipality, the limitations specified in R.C. 153.56 do not apply. In other words, there is a municipal ordinance involved which supersedes the general language of R.C. 153.56. The difficulty with this argument, however, is that the Cleveland Code has no period of limitations for payment or performance bonds. Thomas Steel conceded below, as it did in this court, that we must look to the Revised Code for the appropriate statute of limitations. Consequently, Thomas Steel argued before the trial court that the proper statute was the fifteen-year statute of limitations, R.C. 2305.06, for breach of a "contract in writing." On appeal, Thomas Steel appears to have abandoned the fifteen-year statute. Instead, it now argues that "the 10–year statute of limitations of R.C. § 2305.12 applies to Thomas Steel's bond claim against Safeco." We find these arguments unpersuasive.

The express wording of R.C. 153.54 makes the provisions of that statute applicable to bidding for a contract with "any political subdivision" for "any public improvement." R.C. 153.54(A). On its face, this applies to the city's airport improvement project. No exception or exclusion has been made in this statute for charter municipalities. Furthermore, R.C. 153.56 expressly excludes application of R.C. 2305.12 because it requires that any "action be commenced, notwithstanding section 2305.12 of the Revised Code, not later than one year from the date of acceptance of the public improvement." Thus, the legislature expressly ruled out the ten-year limitation of R.C. 2305.12 on payment bond claims.

It cannot be disputed that the Constitution of Ohio gives the city of Cleveland authority to adopt home rule powers of local self-government. Section 3, Article XVIII, Ohio Constitution. However, there are no provisions contained in the Cleveland Codified Ordinances, nor any in the city's charter, stating that the city is, in effect, overriding general statutes regarding bond claims on public improvement contracts. Quite to the contrary, C.C.O. 185.19(j) provides that public improvement contract documents shall be deemed to include "[a]ll provisions required by law, Charter or Ordinance to be inserted in the contract, whether actually inserted or not." The term "law" is defined in C.C.O. 185.20(j) to include "the Constitution of the State, the charter, a statute of the United States or of the State, the Codified Ordinances and any Municipal Ordinances, rule or regulation having the force of law which is applicable to this contract." Moreover, in the general conditions clause of the construction contract itself, at Section B–1, paragraph a(10), it is provided that the contract documents are deemed to include similar provisions as those just stated above.

■ Considering these provisions which incorporate statutes as part of the contract documents, and in the absence of any provisions in the city's charter or

municipal ordinances explicitly declaring an intent by the city to supersede or otherwise override these provisions, the application of R.C. 153.56 to the subject bond claims in this case is clear. In selecting which statute of limitations to apply in the Revised Code, "a special statutory provision which relates to the specific subject matter involved in the legislation is controlling over a general statutory provision which might otherwise be applicable." *Andrianos v. Community Traction Co.* (1951), 155 Ohio St. 47, 44 O.O. 72, 97 N.E.2d 549, paragraph one of syllabus. See, also, R.C. 1.51 and discussion *infra*. A bond claim statute which applies to a contract with "any political subdivision" of the state for "any public improvement" is squarely on point. We agree with the trial court that the limitations periods specified in R.C. 153.56 bar the bond claims asserted by Thomas Steel.

Assignments of Error I and II are overruled.

"III. The trial court erred when it granted defendants–appellees' motion for summary judgment and dismissed plaintiff–appellant's complaint as time barred where the one-year statute of limitations of R.C. § 153.56 is inapplicable to an unjust enrichment claim brought against the general contractor by a materialman who is not in privity of contract for nonpayment of retained funds."

Thomas Steel argues that the one year limitations period set forth in R.C. 153.56 is inapplicable to its unjust enrichment claim because it "is not in privity of contract with Wilson Bennett." Therefore, "the six-year statute of limitations of R.C. 2305.07 governs Thomas Steel's claim for unjust enrichment." R.C. 2305.07 governs claims for enforcement of contracts not in writing. This argument by its terms applies only to Wilson Bennett, since Safeco cannot be deemed to have been unjustly enriched for materials supplied to Simms Steel. Nevertheless, the argument fails as to Wilson Bennett for several reasons.

Thomas Steel did not raise at the trial court level the issue of whether its claim for unjust enrichment (*quantum meruit*) was subject to the six-year limitations under R.C. 2305.07. Rather, it relied on the fifteen-year statute of limitations for written contracts (R.C. 2305.06) and the ten-year statute on official bonds (R.C. 2305.12). Plaintiff Thomas Steele's motion for summary judgment at 12. Therefore, we are not required to address the argument for the first time on appeal.

It is fundamental that a reviewing court need not consider any issues that could have been raised in the trial court, but were not. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317–318, 436 N.E.2d 1001, 1003–1004; *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 545, 632 N.E.2d 1341, 1342–1343. The Ohio Supreme Court has consistently held that it will generally not consider issues in a civil action that were not presented for consideration to the trial court. *State ex. rel. Zollner v. Indus. Comm.* (1993), 66 Ohio St.3d 276,

278, 611 N.E.2d 830, 832; *Miller v. Wikel Mfg. Co.* (1989), 46 Ohio St.3d 76, 78–79, 545 N.E.2d 76, 78–80; *Centennial Ins. Co. v. Liberty Mut. Ins. Co.* (1980), 62 Ohio St.2d 221, 226, 16 O.O.3d 251, 254, 404 N.E.2d 759, 763. Thus, a party has waived the right to contest an issue on appeal if that issue was in existence prior to or at the time of trial and the party did not raise it at the appropriate time in the court below. *State v. Self* (1990), 56 Ohio St.3d 73, 81, 564 N.E.2d 446, 454; *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 22 OBR 199, 202–203, 489 N.E.2d 277, 279–280.

"Generally, an appellate court will not consider an issue which was not raised before the common pleas court. This holding is based upon the proposition that an appellate court should not reverse a decision on a ground which the common pleas court was never given the opportunity to consider." *Andolsek v. Willoughby Hills Bd. of Zoning* (Dec. 10, 1993), Lake App. No. 93–L–050, unreported, 1993 WL 548046.

Although Thomas Steel did timely raise in its summary judgment papers issues in favor of its unjust enrichment claim, its complaint (second cause of action) stated a claim on the only payment bond as follows:

"21. Thomas Steel incorporates by reference herein all of the allegations contained in paragraphs 1 through 20 of this Complaint as if fully rewritten herein.

"22. Wilson Bennett is the principal on the Bond.

"23. On or about January 5, 1996, Wilson Bennett, contrary to the terms of the bond, denied the claim of Thomas Steel on the Bond.

"24. As a direct and proximate result of Wilson Bennett's wrongful denial of Thomas Steel's claim on the Bond, Thomas Steel has been damaged in an amount not less than $20,845.00, exclusive of interest and costs."

This can be read only as a contract claim against Wilson Bennett on the payment bond rather than an unjust enrichment claim. Thomas Steel is in privity of contract with Wilson Bennett as a third-party beneficiary because the payment bond itself states: "We [Wilson Bennett and Safeco] hereby agreeing and consenting that this undertaking shall be for the benefit of any laborers or materialman having a just claim as aforesaid as for the City * * *."

In any event, we find that plaintiff's exclusive remedy against Wilson Bennett was on the bond, not on other common-law remedies. See *Gen. Elec. Supply Corp. v. Wiley Elec. Co.* (1933), 47 Ohio App. 196, 191 N.E. 706 (held: statutory remedy of materialmen or laborers on bond of public improvement contractor is exclusive under G.C. 2365–3, predecessor to R.C. 153.56). If an independent claim for unjust enrichment were also allowed, subcontractors,

material suppliers, and laborers on public works contracts could effectively ignore the notice and commencement-of-suit requirements of the bond statute, which would become meaningless.

Plaintiff has called our attention to *Cleveland City School Dist. Bd. of Edn. v. United Pacific Ins. Co.* (June 28, 1991), Cuyahoga App. No. 60374, unreported, 1991 WL 117936, in which this court held that the *performance* bond of a general contractor and its surety was governed by the fifteen-year statute of limitations (R.C. 2305.06) in a claim for roof defects on a school building. United Pacific was not a *payment* bond action controlling the issues at stake here, but one of the critical findings was that the liability of the surety was coextensive with the principal. We stated as follows at 4:

"It would be ludicrous and disastrous public policy to dismiss the liability of a surety on a bond in ten years, while holding the obligor liable on the written instrument for fifteen years.

"The Ohio Supreme Court has declined to interpret a surety's liability pursuant to a bond with a restrictive view; thus, the court stated in *St. Paul Fire & Marine Ins. Co. v. Indus. Comm.* (1987), 30 Ohio St.3d 17, 20 [30 OBR 24, 26–27, 506 N.E.2d 202, 204], as follows:

"A surety is primarily and jointly liable with the principal debtor. His obligation is created concurrently with that of the principal debtor. * * * (Citations omitted.)

"It is evident the bond issued by United Pacific Insurance as surety was intended to secure payment for breach of performance by Forepaugh occurring during the life of the bond." *Id.*

We likewise conclude that it would be poor public policy to bar the obligation of the surety Safeco under R.C. 153.56, as we have held, but to allow a claim against the principal for unjust enrichment. The obligations and defenses of the principal and surety on a payment bond should be coextensive and concurrent. Cf. *Whitaker Merrell Co. v. Claude A. Janes, Inc.* (C.P.1961), 87 Ohio Law Abs. 556, 566, 173 N.E.2d 402 (liability of surety on public bond for interest is coextensive with that of principal).

Finally, we must take issue with Thomas Steel's contention that R.C. 2305.07 is the applicable statute of limitations on the unjust enrichment claims, not R.C. 153.56. The determination of which of the two statutes of limitations is applicable herein is decided on their classifications as either general or specific statutes. It is well established in Ohio that specific provisions prevail over conflicting general

statutes. See, *e.g., State v. Chippendale* (1990), 52 Ohio St.3d 118, 120, 556 N.E.2d 1134, 1136–1137. R.C. 1.51 states:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

In *Andrianos v. Community Traction Co.* (1951), 155 Ohio St. 47, 44 O.O. 72, 97 N.E.2d 549, at paragraph one of the syllabus, the Ohio Supreme Court held:

"A special statutory provision which relates to the specific subject matter involved in litigation is controlling over a general statutory provision which might otherwise be applicable."

The limitations provision under R.C. 2305.07 has general applicability to contracts not in writing. By contrast, R.C. 153.56 is a special statute covering the specific subject matter at hand, bonded claims for payment on public projects. The statute of limitations set forth in R.C. 153.56 relates specifically to suits brought against sureties on bonds by persons claiming that money is due for labor or work performed or materials furnished to a public improvement. Thus, R.C. 153.56, the specific statutory provision, takes preference over R.C. 2305.07, a general statutory provision.

Assignment of Error III is overruled.

*Judgment affirmed.*

Patton and Rocco, JJ., concur.