**Rose WEST Plaintiff**

v.

**VISTEON CORPORATION,
et al. Defendants**

No. 1:04CV2226.

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 7, 2005.

Joseph A. Zannieri, Norwalk, OH, for Plaintiff.

Margaret Mattimoe Sturgeon, Eastman & Smith, Toledo, OH, Jeffrey S. Kopp, Foley & Lardner, Detroit, MI, for Defendants.

*MEMORANDUM OF OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND*

WELLS, District Judge.

On 10 September 2004, plaintiff Rose West filed a complaint against defendants Visteon Corporation ("Visteon") and Jan O'Brien[1] in the Ohio Court of Common Pleas for Erie County. (Docket # 1, Ex. A). Ms. West's complaint alleges a single claim for "tortious interference with contractual relationships" against both parties. (Docket # 1, Ex. A). Defendant Visteon Corporation filed a notice of removal, pursuant to 28 U.S.C. § 1446, on 8 November 2004. (Docket # 1).[2] In its notice of removal, Visteon alleged that this Court has diversity jurisdiction over this case, pursuant to 28 U.S.C. § 1332(a)(1), because Visteon and Ms. West are citizens of different states, because defendant O'Brien was fraudulently joined, and because the amount in controversy exceeds $75,000. (Docket # 1, at ¶¶ 2–4). In terms of citizenship, the parties agree that plaintiff West is a citizen of Ohio, that defendant Visteon is a citizen of Delaware or Michigan, and that defendant O'Brien is a citizen of Ohio. (Docket # 1, Ex. A at ¶¶ 1–3; Docket # 1, at ¶¶ 7–9).

On 23 November 2004, Ms. West filed a motion to remand the case to the Erie County Court of Common Pleas. (Docket # 6). While she does not dispute the apparent satisfaction of the amount in controversy requirement, Ms. West argues that this Court lacks jurisdiction because the opposing parties are not completely diverse; that is, both plaintiff West and defendant O'Brien are citizens of Ohio. On 9 December 2004, Visteon filed its opposition to plaintiff's motion. (Docket # 7). Although Visteon does not dispute the well-established requirement of "complete diversity between all plaintiffs on one side and all defendants on the other side," *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 664 (6th Cir.2004) (*citing Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996)), it contends that Ms. O'Brien was fraudulently joined and therefore this Court nonetheless has diversity jurisdiction over this case. Ms. West then filed a reply. (Docket # 8).

For the reasons set forth below, plaintiff's motion to remand will be denied.

## I. BACKGROUND

Plaintiff Rose West operated a "quality control consulting business" on the premises of Visteon's Sandusky, Ohio factory. (Docket # 1, Ex. A, at ¶¶ 2 and 4). Ms. West provided "contracted services for seven corporations which supplied parts and other manufactured items" to Visteon. (Docket # 1, Ex. A, at ¶ 4). On 10 September 2003, Ms. West was allegedly overheard making a remark which violated Visteon's "No Harassment Policy." (Docket # 1, Ex. A, at ¶ 7). Defendant O'Brien, Visteon's human resources manager, "acting in the course and scope of her employment" allegedly investigated the incident. (Docket # 1, Ex. A, at ¶ 9). Although Ms. West was "never told the specific nature of the conduct that was attributed to her"

1. Although Ms. West's complaint refers to Jan O'Brien as a person "[w]hose true name and address are unknown and cannot be determined," defendants admit that Jan O'Brien is Visteon's Sandusky Plant Human Resources Manager who was responsible for investigation at issue in this case. (Docket # 7, at 1).

2. According to Visteon, Ms. O'Brien has not yet been served with the complaint. (Docket # 1, at ¶ 3).

and was not allowed to provide any input into the investigatory process, she was ultimately refused further admittance to the Sandusky plant based on her purported violation of Visteon's "No Harassment Policy." (Docket # 1, Ex. A, at ¶ 8). As a consequence of Visteon's refusal to allow Ms. West access to its Sandusky plant, Ms. West alleges that "she has lost the business of the suppliers that she served at the Visteon plant, and her consulting business has been reduced to nothing." (Docket # 1, Ex. A, at ¶ 13). Based on defendants Visteon and O'Brien's purported actions leading to her prohibition from the plant, Ms. West asserts a claim of "tortious interference with contractual relationships" against both Visteon and O'Brien. (Docket # 1, Ex. A, at ¶ 12). Although Ms. West names both Visteon and O'Brien as defendants, her prayer for relief relates to defendant Visteon only. (Docket # 1, Ex. A, at ¶ WHEREFORE).

## II. REMOVAL JURISDICTION

▮ Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 374, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). As established by 28 U.S.C. § 1441(a), federal courts can acquire removal jurisdiction over a state court action if that action originally could have been filed in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir.2000). Because the language and legislative history of Section 1441 reveal a congressional intent to restrict the removal jurisdiction of federal courts, Section 1441 should be narrowly construed to ensure "due regard for the rightful independence of state government." *Shamrock Oil Corp. v. Sheets,* 313 U.S. 100, 107–109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Long v. Bando Manufacturing of America, Inc.,* 201 F.3d 754, 757 (6th Cir.2000) (explaining that because the removal statutes implicate federalism concerns, they are to be narrowly construed against removal). In the interest of comity and federalism, any ambiguity regarding the scope of the removal statutes and all doubts as to whether removal is proper should be resolved in favor of remand to the state courts. *Brierly v. Alusuisse Flexible Packaging, Inc.,* 184 F.3d 527, 534 (6th Cir.1999); *Coyne ex rel. Ohio v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999).

▮ In seeking to remove a case based on diversity jurisdiction, the defendant bears the burden of establishing, among other things, the complete diversity of the parties. *Gafford v. General Elec. Co.,* 997 F.2d 150, 158–59 (1993); *Rogers v. Wal–Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir.2000) (explaining that the defendant removing a case has the burden of proving the diversity jurisdiction requirements).[3] This burden strikes a proper balance between "the competing interests of protecting a defendant's right to remove and limiting diversity jurisdiction." *Gafford,* 997 F.2d at 158. Although complete diversity must exist at the time of removal, the "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne,* 183 F.3d at 492–93. To prove fraudulent joinder, the removing party must "present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id.* at 493. If there is even a colorable basis for recovery against the non-diverse defendants, the

---

**3.** In addition to diversity of parties, the matter in controversy must exceed "the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Neither party contests the satisfaction of this requirement.

case must be remanded to state court. *Id.* All disputed questions of fact and ambiguities in the controlling state law must be resolved in favor of the non-removing party. *Id.*

## III. ANALYSIS

Visteon contends that Ms. O'Brien has been fraudulently joined because her actions, taken in the course and scope of her employment, must be attributed to Visteon and that therefore Ms. O'Brien cannot be held personally liable under Ohio law. Accordingly, the fraudulent joinder issue in this case turns on a fairly straightforward question: can Ms. O'Brien, acting within the course and scope of her employment with Visteon, be held personally liable, under Ohio law, on Ms. West's claim for tortious interference with her business relationships with Visteon's suppliers?

Ohio law recognizes both the tort of intentional interference with a contract and the tort of intentional interference with a prospective contractual relationship. *Gray–Jones v. Jones,* 137 Ohio App.3d 93, 100, 738 N.E.2d 64 (2000).[4] These torts generally occur "when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another, or not to perform a contract with another." *A & B–Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995). The limited question presented in this case relates to the potential liability of an employee for tortious interference when the acts complained of occurred within the scope of her employment.

In *Anderson v. Minter,* 32 Ohio St.2d 207, 213, 291 N.E.2d 457 (1972), the Ohio Supreme Court held that no cause of action will lie for an employee's claim that her supervisor tortiously interfered with

her employment "when the act complained of is within the scope of the [supervisory employee's] duties." This rule has been consistently applied in subsequent decisions, *Contadino v. Tilow,* 68 Ohio App.3d 463, 467–68, 589 N.E.2d 48 (1990); *Brahim v. Ohio College of Pediatric Medicine,* 99 Ohio App.3d 479, 489, 651 N.E.2d 30 (1994) (explaining that no action will lie where "the act complained of is within the scope of a defendant's duties"); *Daup v. Tower Cellular, Inc.,* 136 Ohio App.3d 555, 567, 737 N.E.2d 128 (2000); and *Mulvin v. City of Sandusky,* 320 F.Supp.2d 627, 641–42 (N.D.Ohio 2004). Although relevant and instructive, these cases involve factual scenarios in which a supervisor allegedly interfered with the plaintiff's relationship with their employer.

Ohio courts have also held that a tortious interference claim does not lie against an employee-agent, acting in the scope and course of her employment, when the relationship allegedly interfered with involves a plaintiff third-party and the agent's principal. *Miller v. Wikel Mfg. Co.,* 46 Ohio St.3d 76, 79, 545 N.E.2d 76 (1989); *Pannozzo v. Anthem Blue Cross & Blue Shield,* 152 Ohio App.3d 235, 239, 787 N.E.2d 91 (2003); *Russell v. City of Northwood,* 1998 WL 102137, *3 (Ohio App. Feb. 27, 1998); *Shampton v. City of Springboro,* 2001 WL 1403051, *15 (Ohio App. Nov. 13, 2001). Although closer to the fact pattern presented by this case, the relationship purportedly interfered with is somewhat different. Unlike in *Miller, Pannozzo, Russell,* and *Shampton,* this case involves a situation where an employee-agent (Ms. O'Brien) in the course of her duties for her employer-principal (Visteon) allegedly interfered with a relationship between two third parties—plaintiff West and Visteon's suppliers.

Ms. West contends that the particular relationships involved in this case render

---

**4.** This tort is subsequently referred to as "tor-    tious interference."

inapplicable *Anderson, Miller,* and their progeny. Recognizing that no cause of action would lie against Ms. O'Brien if Ms. West were employed by Visteon and Ms. O'Brien were her supervisor and, similarly, that no action would lie if the relationship purportedly interfered with involved Ms. West and Visteon, Ms. West nonetheless argues that those situations are the exception and not the rule with respect to employee liability for tortious interference. Without citing a single case on point,[5] she maintains that Ms. O'Brien, though she was acting within the scope and course of her employment, can be held personally liable for tortiously interfering with a relationship between two third parties—Ms. West and Visteon's suppliers. In advancing such an argument, Ms. West implicitly suggests that the determinative factor in the cases finding no individual liability is the nature of the relationship interfered with rather than the fact that the purportedly wrongful acts occurred in the course and scope of the individual defendant's employment.

While the nature of the various relationships may in certain instances be relevant, it is nonetheless evident that Ohio courts have consistently refused to find agent-employees individually liable for tortious interference when they were acting within the course and scope of their duties and on behalf of their principal-employer. Applying the principles garnered from existing case law, Ms. O'Brien may only be held individually liable on Ms. West's tortious interference claim to the extent that her actions were not taken on behalf of her employer and "benefitted [her] solely in a personal capacity." *Miller,* 46 Ohio St.3d at 79, 545 N.E.2d 76. Although Ms. West suggests that the underlying logic should change when the relationship interfered with involves a plaintiff-third party and another third party rather than a plaintiff-third party and the agent's principal, she has offered no case law or reasonable explanation to support such a distinction.[6] In both cases, an employee, whose acts allegedly constituted and/or contributed to the tortious interference, engaged in that conduct on behalf of her employer and therefore it is the employer, and not the employee, who faces potential liability.[7]

5. To support the thrust of her argument, Ms. West relies on an Ohio Supreme Court case which held that a bailee is liable, based on his contract of bailment, for breach of duty to the bailor even though he performed through an agent and his agent acted contrary to his instructions. *National Liberty Ins. Co. v. Sturtevant–Jones Co.,* 116 Ohio St. 299, 156 N.E. 446 (1927).

6. In her reply brief, Ms. West cites *Doyle v. Fairfield Machine Co.,* 120 Ohio App.3d 192, 697 N.E.2d 667 (1997) as a case that purportedly "shows directly that an employee of the interferer can be held personally liable, even if acting as an employee." (Docket # 8, at 4). *Doyle* does not stand for such a broad proposition. Although *Doyle* involved a tortious interference claim brought against two individual defendants, a CEO and controller, and their corporate employer, a claim for which a jury found all three defendants liable, the court of appeals did not separately discuss the

possible liability of the individual defendants versus their employer and did not discuss whether the alleged interfering act—the controller's filing of a complaint about plaintiff with the Ohio Department of Insurance—occurred within the scope of the individual defendants' duties. Rather, it merely reviewed certain jury instructions for plain error, ultimately identifying certain errors unrelated to the issue in this case and deeming them harmless. *Id.* at 215–19, 697 N.E.2d 667. Because *Doyle* did not address the issue pertinent to this case, it does not support Ms. West's contention that Ms. O'Brien could be held personally liable.

7. Although defendant also asserts that *Tresner v. Pepsi–Cola Bottling Co. of Columbus,* 1992 WL 214374, *2–3 and 6 (Ohio App. Aug. 27, 1992) is directly on point, *Tresner* (like *Anderson* ) involved allegations of tortious interference by a plaintiff employee against his supervisor. Another case cited by

■ Under Ohio law, Ms. O'Brien cannot be held personally liable for tortious interference with plaintiff's business relationships because her actions were taken in the scope and course of her employment with Visteon.[8] Rather, Ms. West's recourse is against Visteon. Since Ms. West has not presented a colorable basis for her claim against Ms. O'Brien, Ms. O'Brien has been fraudulently joined and will be dismissed as a party. Once Ms. O'Brien is dismissed from this action, it is evident that this Court has removal jurisdiction over the present action, given the complete diversity of the parties.

## IV. CONCLUSION

Because Ohio law does not permit Ms. West to recover on her tortious interference claim as it is alleged against Ms. O'Brien, Ms. O'Brien is not a proper party to this action and shall be dismissed. Having dismissed Ms. O'Brien, the parties are completely diverse and the exercise of this Court's removal jurisdiction is proper. Accordingly, Ms. West's motion to remand is denied.

IT IS SO ORDERED.

defendant, *Plazzo v. Nationwide Ins. Co.*, involves a situation slightly more analogous to this case. 1986 WL 12543 (Ohio App. Nov. 5, 1986). In *Plazzo*, the Ohio Court of Appeals squarely rejected claims that Nationwide's managerial employees could be held liable for tortiously interfering with contractual relationships that certain independent agents had with Nationwide policyholders. *Id.* at *1 and *5. Accordingly, though the precise nature of the relationship between Nationwide and the independent agents is a little murky, the case lends additional support to this Court's conclusion that Ohio law does not permit a claim of tortious interference against Ms. O'Brien.

8. This case does not implicate the very different situation where an employee acted outside the scope of his or her duties without the permission or acquiescence of his or her employer.