**Debra Ann BLOUGH, Plaintiff,**

v.

**HAWKINS MARKET, INC., Supervalu Holding, Inc. dba NC & T Supermarkets, Inc., and William Mowrer, Defendants.**

No. 5:98–CV–0825.

United States District Court, N.D. Ohio, Eastern Division.

June 7, 1999.

David C. Knowlton, Kennedy, Cicconetti & Rickett, Wooster, OH, for Debra Ann Blough, plaintiff.

Vincent Joseph Tersigni, Buckingham, Doolittle & Burroughs, Akron, OH, for Hawkins Market, Inc., defendant.

Heather Leigh Areklett, Thompson, Hine & Flory, Cleveland, OH, Keith P. Spiller, Thompson, Hine & Flory, Cincinnati, OH, for Supervalu Holding, Inc., William Maurer, defendants.

William Maurer, Wooster, OH, pro se.

## OPINION AND ORDER

GWIN, District Judge.

On March 8, 1999, Defendants Hawkins Market, Inc. ("Hawkins"), SuperValu Holding, Inc. ("SuperValu"), and William Mowrer filed motions for summary judgment in this discrimination action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1] [Docs. 41 and 43]. With these motions, the Court must determine whether genuine issues of material fact exist regarding Plaintiff Debra Blough's claims of sexual harassment and negligent supervision.

Because the Court finds all of Plaintiff Blough's claims must fail as a matter of law, the Court grants defendants' motions for summary judgment.

[1] Defendants SuperValu and Mowrer filed a joint motion; Defendant Hawkins filed a separate motion.

## I. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) states the procedure for granting summary judgment and says in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987); SEC v. Blavin, 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. 60 Ivy Street Corp., 822 F.2d at 1435.

Essentially factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. See id. But not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. Id. at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the non-moving

party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *60 Ivy Street*, 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street*, 822 F.2d at 1436 (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505).

On March 8, 1999, Defendants Hawkins, SuperValu, and Mowrer filed motions for summary judgment. In her response to defendants' motions, Plaintiff Blough conceded she could not set forth sufficient facts to establish questions of fact regarding her claims of negligent supervision of Lloyd Ritter, assault and battery by Ritter, wrongful discharge, and wrongful discharge in violation of Ohio's public policy.[2]

This concession eliminated all claims against Mowrer, leaving only claims against Hawkins and SuperValu.[3] Remaining for this Court's consideration are two claims of sexual harassment and one claim of negligent supervision.

The Court reviews the relevant facts of each remaining claim with the applicable legal standard in mind.

## II. FACTUAL BACKGROUND

On August 21, 1997, SuperValu fired Debra Ann Blough when SuperValu determined Blough took groceries from the store without paying for them. On April 8, 1998, Blough filed this action. Plaintiff Blough contends she was sexually harassed by two co-workers, Lloyd Ritter and William Mowrer. Plaintiff seeks to hold Hawkins and SuperValu responsible for Ritter and Mowrer's acts, as well as for their negligent supervision of Mowrer.

---

**2.** Plaintiff Blough also conceded that even if she could establish that her discharge was in retaliation for filing a sexual harassment claim with the EEOC, she could not rebut Defendant SuperValu's assertion that she was discharged for a legitimate, nondiscriminatory reason. *See* Brief in Opposition [Doc. 47], n. 1.

**3.** The Court notes that the plaintiff's failure to respond to a summary judgment motion on an issue does not automatically result in granting summary judgment to the movant. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that it has met the burden imposed by Rule 56(c). *Kajganic v. Bell*, 86 F.3d 1155 (TABLE), 1996 WL 273740, *1 (6th Cir.1996). In every case, the moving party bears the burden of demonstrating the absence of a genuine issue as to a material fact. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991) (citing *Adickes*, 398 U.S. at 157, 90 S.Ct. 1598). That burden may be discharged by pointing to an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

Defendants have met their burden regarding the conceded issues. With regard to the negligent supervision claim against Hawkins, there is no evidence that Hawkins had any prior knowledge that Ritter was a "dangerous person" or a person predisposed to make unwelcome sexual advances. Regarding the assault and battery claim, it is barred by the one-year statute of limitations provided in Ohio Rev.Code § 2305.111. Finally, even if plaintiff could make a *prima facie* case on her wrongful discharge claims, defendant SuperValu has shown a legitimate, nondiscriminatory reason for firing Blough, which Blough concedes she cannot overcome.

Because defendants have met their burden and in the absence of any countervailing arguments offered by Plaintiff Blough, there is no genuine issue of material fact to be determined regarding the conceded issues. Therefore, the Court grants defendants' motion for summary judgment on these issues.

Blough began her employment with Hawkins Market as a produce clerk on July 5, 1993. Her immediate supervisor was Steve Jacquet, the produce manager, who was in turn supervised by Greg Webb. On March 24, 1997, Blough's employer changed when Hawkins Market sold its assets to SuperValu. After this sale, Mark Zuchek replaced Greg Webb as Jacquet's supervisor.

In late summer or early fall, Blough was walking away from the produce department's back room. As she exited the room, a co-worker in the produce department, Lloyd Ritter, patted Blough on the buttocks. Blough told him to stop and he did. Blough reported the incident to her supervisor, Jacquet, the following day. Jacquet told Blough that she should "deck" or slap Ritter if it ever happened again.

On January 12, 1997, Ritter offered to help Blough lift a forty-pound box of produce. Blough accepted. As he reached under the box to help her lift it, he grabbed plaintiff's crotch. Plaintiff retreated from Ritter and told him never to touch her. Ritter immediately apologized to Blough and said he did not know what came over him. Blough reported this incident to Jacquet the following day.

In the summer of 1996, an employee in the dairy department, William Mowrer, allegedly attempted to kiss plaintiff while she was taking a smoke break in the dairy department. Blough says she reported the incident to Jacquet.[4]

On or about April 7, 1997, Plaintiff Blough was in the store's back room to break down boxes. She says that Mowrer was nearby and that she saw him rubbing his crotch for anywhere from one to three minutes. She denies that he was masturbating, but says that he continued the action and said, "something needs adjusted."

Plaintiff says she then left the area and went directly to Zuchek, Jacquet's supervisor, to report the incident. Zuchek met with Blough for approximately 45 minutes, during which she spoke about that day's incident as well as the previous incidents involving Mr. Ritter.

Zuchek immediately confronted Ritter and Mowrer and contacted John Schulcz, SuperValu's Regional Human Resources Manager. Schulcz interviewed Blough two days later. Zuchek informed both Ritter and Mowrer their conduct was unacceptable and that any further acts of sexual harassment or retaliation would result in termination. SuperValu ultimately moved Ritter out of the produce department. Zuchek and Schulcz continued to follow up with Blough to determine whether she had any further problems.

On August 19, 1997, Blough undertook a plan to deceive her employer regarding a purchase of groceries. Believing she was being "watched" by management, Blough made it appear she was stealing groceries so that when confronted by store personnel she would present a receipt to prove she had indeed paid for the groceries. It does not appear any SuperValu employees confronted plaintiff about her purchases on April 19.

On April 21, SuperValu informed Blough she was terminated for stealing. Blough protested that she had a receipt in her pocket that would prove her innocence, but she refused to produce it. Blough's deposition testimony also indicates that the receipt does not reflect two items she took from the store.

On April 8, 1998, Blough filed the instant action. As explained above, plaintiff's claims for negligent supervision of Ritter, assault and battery, and wrongful discharge are no longer before the Court. The Court addresses the remaining sexual harassment and negligent supervision claims in turn, below.

---

4. Blough's deposition transcript reveals she reported the incident to Jacquet. However, in her complaint plaintiff states that she reported the incident only to another co-worker.

## III. ANALYSIS

Plaintiff Blough says Defendants Hawkins and SuperValu discriminated against her in violation of Title VII because she was subject to *quid pro quo* sexual harassment. Blough asserts that because Hawkins and SuperValu failed to take appropriate measures to curtail the conduct of Ritter and Mowrer, submission to her co-workers' conduct was implicitly made a term or condition of her employment.

Blough also claims Defendant Hawkins failed to take appropriate disciplinary action against Ritter and Mowrer, thereby allowing a hostile work environment to exist.

The Court addresses each of these Title VII claims in turn and finds that both claims must fail.

### A. *Quid Pro Quo* Sexual Harassment

■ To state a claim for *quid pro quo* sexual harassment, Plaintiff Blough must show that: (1) she was a member of a protected class; (2) she was subject to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment complained of was based on sex; (4) her submission to the unwelcomed advances was an express or implied condition of receiving job benefits or that her refusal to submit to her supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability. *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 185–86 (6th Cir.1992); *Petrone v. Cleveland State Univ.*, 993 F.Supp. 1119, 1128 (N.D.Ohio 1998). Plaintiff Blough fails to make a prima facie case of *quid pro quo* sexual harassment because she fails to show the fourth element.

■ First, the conduct at issue was not engaged in by supervisory personnel; Ritter and Mowrer were not supervisors. *See Kauffman*, 970 F.2d at 186–87 (citing with approval cases stating *quid pro quo* harassment involves supervisors); *Highlander v. K.F.C. National Management Co.*, 805 F.2d 644, 648 (6th Cir.1986) (stat-ing supervisory personnel are subject of *quid pro quo* claims).

Second, Blough has not established that Ritter or Mowrer's conduct, or Jacquet's alleged lack of an appropriate response to it, compelled her to elect between acceding to sexual demands and forfeiting job benefits, continued employment or promotion, or otherwise suffering tangible job detriments. Merely stating that the employer's alleged failure to respond appropriately to her complaints forced her to submit to such conditions as a term of employment is insufficient.

Plaintiff must show that submission to sexual advances was required as a term of employment. In other words, she must show that had she not submitted she would have suffered a job detriment. Alternatively, Blough may show that failure to submit to sexual advances actually resulted in a loss of job benefits of some sort. Blough shows neither requirement. On each occasion, Blough rejected or retreated from Ritter's and Mowrer's advances, with no consequences for her refusal to submit. Her frustration at defendants' slowness or failure to respond to her complaints is not the same as "punishment" by an employer for refusing to submit to sexual advances.

There is no evidence that Blough's job duties, responsibilities, pay, and benefits were changed during this period. Her termination in August 1997 cannot reasonably be argued to be connected to her rejection of Ritter's or Mowrer's conduct or her reporting the incidents, which occurred at the latest in early April 1997.

For these reasons, the Court grants defendants' motion for summary judgment on plaintiff's claim of *quid pro quo* sexual harassment.

### B. Hostile Work Environment Sexual Harassment

Plaintiff Blough claims Defendant Hawkins Market is responsible for a hostile work environment in which she was sub-

ject to inappropriate and offensive sexual comments and unwelcome, intimidating physical contact from her co-workers. Because Blough fails to make a *prima facie* case, the Court grants Defendant Hawkins's motion for summary judgment on this claim.

■ To establish a claim for hostile work environment sexual harassment in a co-worker discrimination case, a plaintiff must show: (1) she is a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) defendant knew or should have known of the charged sexual harassment and failed to implement prompt and corrective action. *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir.1997).

■ Both objective and subjective standards must be applied when determining whether conduct constitutes a hostile environment in violation of Title VII. *Barna v. City of Cleveland*, 172 F.3d 47 (TABLE), 1998 WL 939884, *5 (6th Cir.1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Conduct must be so severe and pervasive that both a reasonable person and the actual victim find it abusive. *Id.* In making this determination, courts should consider several factors, including the frequency of the alleged conduct, its severity, its verbal or physical nature, and whether it unreasonably interfered with an employee's work performance. *Id.*

■ In the instant case, the conduct comprises at most four incidents, engaged in by two co-workers, over the course of approximately nine months. Ritter and Mowrer were each involved in two incidents. Ritter's conduct allegedly involved inappropriate touching of the plaintiff; Mowrer's conduct did not. It is questionable whether the Mowrer incident in the back room was even directed at Blough.

The first incident involving Ritter allegedly took place in late summer or early fall 1996. Blough says she told him to keep his hands to himself, and Ritter did not engage in offensive conduct again until January. The first incident involving Mowrer, when Blough says he allegedly tried to kiss Blough, took place in summer 1996. Blough rejected this advance. The incident in the back room with Mowrer did not occur until nine months later, in early April 1997.

Although the conduct at issue, if proven to have occurred, was inappropriate and subjectively offensive to Blough and could be offensive to a reasonable person, it was not severe or pervasive enough to rise to a hostile work environment. "A hostile environment claim require[s] the plaintiff to show that [her] work environment was so pervaded by ... harassment as to alter the terms and conditions of [her] employment." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, ——, 118 S.Ct. 2257, 2272, 141 L.Ed.2d 633 (1998). A hostile environment requires more than a few isolated incidents of offensive conduct. *Id.*

■ Actionable sexual harassment occurs when the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Though Ritter's and Mowrer's conduct was inappropriate and offensive, this was not a workplace so permeated with intimidation, ridicule, and insult that Blough's working conditions were altered.

Although Blough's complaint alleges the conduct at issue interfered with her work performance, Blough offers no evidence to that end. Blough alleges that at certain times she was very uncomfortable working near or with Ritter and that she suffered psychological harm. But she fails to show her work performance was affected or lim-

ited in some any way as a result of Ritter's or Mowrer's conduct.

■ Even if the conduct rose to the level of a hostile work environment, an employer is liable only for negligence; that is, only if the employer knew, or in the exercise of reasonable care should have known, about the harassment and failed to take prompt remedial action. *Ellerth*, 118 S.Ct. at 2267–68. In addition, "[i]f the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2292, 141 L.Ed.2d 662 (1998).

The employment handbook in effect before SuperValu purchased Hawkins Market's assets stated that employees may report sexual harassment to the store manager or "head office girl." A separate document, typed in large, bold print and posted in the employee break room, directed employees to report any complaints of sexual harassment to Greg Webb (Jacquet's supervisor before SuperValu purchased the store) or Ellen Gasser.

Blough reported the conduct involving Ritter to her immediate supervisor, Steve Jacquet, who told Blough he couldn't make any promises about changing her schedule so that she could avoid working with Ritter. She also approached Greg Webb, the person designated in the store policy, after the incident in which Mowrer tried to kiss her. Webb could not speak with her at the moment, and she did not follow up with him.

Blough indicates that in her fours years of employment at Hawkins Market, she never once set foot inside the employees' break room. She claims no knowledge of the posted policy directing her to report incidents to particular personnel. She also says she is not bound by the handbook's language directing her to the store manag-

er or head office girl because the handbook only states that she "may" report to those persons. But her approach of Webb indicates she believed he had authority to deal with such complaints—consistent with his being identified in the store's policy—yet she did not follow up with him.

Upon SuperValu's purchase of the store, Mark Zuchek replaced Greg Webb as Jacquet's supervisor. After the April 7, 1997, incident involving Mowrer, Blough complained to Zuchek. There is no dispute that Zuchek took immediate action to resolve the issue, that there were no further incidents of sexual harassment, and that SuperValu consulted with Blough several times after that date to be certain no further incidents had occurred. When Blough informed the proper personnel under Hawkins Market's policy, immediate action was taken to resolve the issue.

In light of the totality of the circumstances described above, there are no genuine issues regarding plaintiff's hostile work environment claim. The Court grants defendants' motions for summary judgment on this issue.

C. Negligent Supervision of Mowrer

Plaintiff Blough alleges Defendants Hawkins and SuperValu are liable for negligent supervision of William Mowrer. Plaintiff's claims fail for three reasons.

■ First, an underlying requirement in actions for negligent supervision is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer. *Greenberg v. The Life Ins. Co. of Virginia*, 177 F.3d 507, 516–18 (6th Cir.1999) (citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 527 N.E.2d 1235 (1988)). In this case, the Court has determined that plaintiff's claims for sexual harassment fail, therefore there is no underlying tort to which a claim of negligent supervision may be attached.[5]

■ Second, an employee bringing a claim of negligent supervision against her

---

5. In addition, plaintiff's claim must fail because a claim for sexual harassment under

Title VII is made against the employer, not the individual employee. Similar claims un-

employer is precluded from doing so by Ohio's workers' compensation scheme. *Webb v. Ohio Casualty Ins. Co.*, 1990 WL 44219, *5 (Ohio App. April 16, 1990).

Finally, to state a claim for negligent supervision, the plaintiff must show, *inter alia,* that the employee's conduct was reasonably foreseeable and that the employer had actual or constructive knowledge that the employee was unfit for the position. Plaintiff Blough offers no evidence to counter defendants' assertion that there was no record of complaints against Ritter or Mowrer, both of whom were employed at Hawkins Market for a significant number of years.

Therefore, the Court grants defendants' motion for summary judgment on the negligent supervision claim.

## IV. CONCLUSION

For the reasons stated herein, the Court grants defendants' respective motions for summary judgment.

IT IS SO ORDERED.

der Ohio Rev.Code § 4112 may result in individual liability against management personnel. *See Genaro v. Central Transport Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999).