Camela S. MINNICH, Tracy J. Beaver,
Plaintiffs–Appellants,

v.

COOPER FARMS, INC.,
Defendant–Appellee.

No. 01–3036.

United States Court of Appeals,
Sixth Circuit.

June 26, 2002.

Before GUY and BATCHELDER,
Circuit Judges; COHN, District Judge.*

PER CURIAM.

Plaintiffs, Camela S. Minnich and Tracy J. Beaver, appeal from the decision granting summary judgment to their employer, Cooper Farms, Inc., on their claims of sexual harassment in violation of both federal and state law, and their claims for negligent retention and supervision under Ohio common law. The district court

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

granted plaintiffs' motion for entry of final judgment on these claims pursuant to Fed. R.Civ.P. 54(b).[1] With respect to the sexual harassment claims, plaintiffs argue that the district court erred in finding that no genuine issue of fact existed regarding employer liability for hostile work environment sexual harassment based on the conduct of a coworker. Plaintiffs also contend that the district court misapprehended the requirements to establish the common law claim for negligent retention and supervision under Ohio law. After a review of the record and the arguments presented on appeal, we reverse summary judgment on the sexual harassment claims and affirm summary judgment with respect to the claims for negligent retention and supervision.

### I.[2]

Defendant employs over 350 people in its turkey processing plant located in St. Henry, Ohio. Beaver began working for Cooper Farms on December 1, 1997, and Minnich started on January 26, 1998. Plaintiffs were assigned to work together in the "tender room" in April 1998, and quickly became good friends. At about the same time, plaintiffs met and became friends with a fellow production worker named Kenny Huston.[3]

Plaintiffs were on friendly terms with Huston until late July or early August 1998, when their relationship with him changed. According to plaintiffs, Huston began making comments about wanting oral sex, describing how good it would feel if he performed oral sex on them, and sticking his tongue out at them. He suggested that he sit one of them on a pile of boxes at work and "eat her." He followed Beaver around blowing kisses at her and suggested that they all three have sex together. Huston repeatedly ran his hands up and down the back of Minnich's legs and rubbed his body and genitals up against Beaver. Huston grabbed them in the buttocks, touched them on the breasts, and hit them on the backside with a board. Minnich testified that Huston once jumped on top of her as she was bent over a combo, bruising her legs. Twice he kicked Minnich in the buttocks hard enough that she cried and thought she might be bleeding.

Minnich testified that sometime in mid-to-late August 1998, she told her supervisor, Theresa King, that Huston had hit her and would not keep his hands to himself. King allegedly responded: "Kenny's Kenny. If you don't like him, get out of the cooler." King told Minnich that Cooper Farms would not do anything about it and said Huston had harassed her in the past. Not satisfied with King's response, Minnich went to the next level manager, Helen Grunden, and complained about Huston's behavior. Grunden said she would "take care of it." When the harassment did not stop, Beaver complained to Jack Staugler,

---

**1.** The district court found that plaintiffs' claims of retaliation for filing complaints of sexual harassment survived summary judgment and found for defendant in plaintiffs' claims for punitive damages under 42 U.S.C. § 1981a(b)(1). Because the district court denied the request for entry of final judgment or certification of these claims for interlocutory appeal, these claims are not before us at this time.

**2.** This recitation of facts is based on both the stipulated and disputed evidence in the record, taken in the light most favorable to the plaintiffs.

**3.** In June 1998, plaintiffs applied for and were qualified as "floaters" who could perform any of several jobs with little or no notice. This came with a pay increase from $8.10 to $8.55 per hour.

the Human Resources Manager for Cooper Farms.[4]

The next day, Staugler met with plaintiffs, Theresa King, and Production Manager Mike Hays. Plaintiffs described Huston's conduct and asked that he be kept away from them. Staugler met immediately with Huston, instructed him to stay away from Minnich and Beaver, and threatened disciplinary action if he failed to do so. Staugler testified that he told plaintiffs they could come to him if they had more problems.[5]

After this warning, Huston stopped making comments and touching or grabbing at them. In October 1998, Staugler approached Minnich and Beaver on the line to check if Huston had stopped bothering them. They told him that Huston was only giving them dirty looks and stares. A few weeks later, Huston poked Minnich in the ribs again. She complained to King, and the harassment stopped for a few more weeks.

In November 1998, plaintiffs got a new supervisor named Sally McDermitt (also known as Sally Jons) and Huston took that as an opportunity to start poking Minnich again. Minnich explained the situation to McDermitt, who was an acquaintance of Huston. McDermitt said she would tell him to stay away, but both plaintiffs indicate the harassment continued into January 1999.

On January 16, 1999, Huston went up to Beaver at work and told her that her son was a "tough little guy." He then explained that he had been driving by her house when the bus let her son off from school. Huston described details about her son and their dog. Beaver was upset by this and complained to Staugler, who questioned Huston about it. Huston claimed that he made regular trips to a doctor that took him past Beaver's house, which was located right on a state highway. Huston also said that he meant the comment to be friendly. Staugler felt the explanation was credible and concluded that further discipline was not warranted.

Minnich had a run-in with Huston at work on January 18, 1999. Minnich was headed to the bathroom when she saw Huston. Referring to the "Pink Floyd" song that was playing at the time, Huston asked her if they were saying "another 'dick' in the wall." Minnich said she did not know and proceeded to the unisex bathroom. Huston followed and started pulling and wiggling the locked door handle. When someone else came into the area, Huston said: "Oh, is somebody in there?" When Minnich opened the door, Huston stood in the doorway and claimed he did not know it was she in the bathroom. He didn't use the bathroom, but followed Minnich back out of the area.

Minnich immediately complained about the incident to her trainer, who does not have authority to discipline. Then, unable to find her own supervisor, Minnich complained to another supervisor, who said she would pass the complaint on to Minnich's supervisor. When Minnich finally located her supervisor a few hours later, she was sent to see Staugler. Staugler took the complaint, interviewed several employees, and gave Huston a one-day unpaid suspension for making physical

---

4. Although defendant suggests that the first meeting resulted because Grunden had spoken to Staugler about the complaints of harassment, Minnich testified that Beaver was the first to talk with Staugler about the harassment.

5. When asked if it would be fair to say that one or two weeks had passed from the time they first reported Huston to King until they met with Staugler, Minnich responded: "I don't know if it was a full week or two. It might have only been a few days."

contact with Minnich after being warned to stay away. Staugler asked that McDermitt and Grunden monitor the situation when Huston returned from the suspension.

On January 27, 1999, Minnich had another run-in with Huston, who she believed had intentionally tried to run her over with a "skid loader." After this incident, Minnich took several hours of personal time to get away from Huston. Staugler learned she was upset, contacted her at home, and arranged a meeting for the next morning. Minnich told Staugler about the skid loader incident and complained that Huston was giving her dirty looks and spreading rumors about her. Huston was telling other coworkers that she had propositioned him and was complaining about sexual harassment because he had turned her down. He was also saying that he and Beaver would be together if he could get Minnich out of the picture.

Staugler looked into Minnich's complaints and told her there was nothing he could do because Huston was threatening to hire a lawyer. Staugler concluded that he could not substantiate the skid-loader complaint and that no disciplinary action was warranted. Nonetheless, on February 24, 1999, Staugler moved Huston to a forklift operator position in order to reduce the opportunity for contact with plaintiffs. Huston continued to stare, give them dirty looks, and call them "bitches" when they met in passing. This continued until Huston was transferred to second shift in July 1999. Plaintiffs had filed an EEOC complaint in March 1999. They also had relinquished their floater pay for a short time beginning in April or May 1999, so that they could work together and "watch each other's back."

On June 28, 1999, Huston told a female supervisor that her "pussy stank" and she should douche. She reported the comment to Staugler and, although she was reluctant, he insisted that she document the complaint. Huston admitted making the statement, and Staugler terminated his employment. Huston appealed the decision to the Peer Review Committee comprised of five supervisory and hourly employees. Although Staugler urged the committee to uphold his decision, Huston was reinstated with a seven-day suspension and counseling.

At the time, defendant's labor policies provided both for such an appeal and that it would abide by the committee's decisions. The policy was subsequently amended to provide that discipline or termination involving discrimination or harassment could no longer be appealed to the committee. When Huston returned to work following the suspension, he was transferred to the second shift. Huston's employment was finally terminated six months after this action was filed, as a result of a complaint of sexual harassment made by another female coworker.

Plaintiffs commenced this action in federal court on November 10, 1999, alleging hostile environment sexual harassment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Ohio common law, and Ohio Rev.Code §§ 4112.02 and 4112.99. Plaintiffs also asserted a common law claim for negligent retention and supervision of Huston. In addition, the complaint alleged that the plaintiffs were retaliated against for having brought charges of sexual harassment. *See* 42 U.S.C. § 2000e–3; OHIO REV. CODE § 4112.02(I). The district court granted summary judgment to Cooper Farms on all of plaintiffs' claims except those for retaliation.[6] Rather than pro-

---

6. The district court found that the evidence of retaliation, taken as a whole, was sufficient to

create genuine issues for trial concerning both adverse action and causation. Because

ceeding to trial on the retaliation claims, the district court granted in part plaintiffs' motion for entry of final judgment on fewer than all of the claims. FED. R. CIV. P. 54(b). This appeal followed.

## II.

The district court's decision to grant summary judgment is reviewed *de novo. Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not rest on its pleadings, but must come forward with evidence from which a rational trier of fact could find in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## A. Statutory Claims of Sexual Harassment

To establish a claim under Title VII for hostile work environment sexual harassment based on the conduct of a coworker, the plaintiffs must each demonstrate that (1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment unreasonably interfered with plaintiff's work performance and created a hostile or offensive work environment that was severe and pervasive, and (5) the employer knew or should have known of the charged harassment and unreasonably failed to take prompt and appropriate corrective action. *Fenton v. HiSAN, Inc.,* 174 F.3d 827, 829–30 (1999); *Blankenship v. Parke Care Ctrs., Inc.,* 123 F.3d 868, 872 (6th Cir. 1997). Ohio courts have long held that federal case law interpreting Title VII is generally applicable to cases brought under the Ohio statute. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (Ohio 1981). As plaintiffs concede, the standards for evaluating coworker hostile work environment sexual harassment claims are the same under both Title VII and Ohio Rev.Code § 4112. *Delaney v. Skyline Lodge, Inc.,* 95 Ohio App.3d 264, 642 N.E.2d 395, 399–400 (Ohio Ct.App.1994).[7]

In granting summary judgment to Cooper Farms, the district court concluded that plaintiffs had not come forward with evidence that would allow a reasonable juror to find employer liability under the fifth prong of the *Blankenship* test. Employer liability in cases of coworker harassment is not derivative, but rather,

the decision to deny summary judgment on the retaliation claims is not before us, we do not discuss the evidence presented in that regard.

**7.** The Ohio Supreme Court recently articulated a test for claims of hostile work environment sexual harassment under Ohio Rev.Code § 4112.02(A) that differs only slightly from the standards we have adopted for such claims under Title VII. *Hampel v. Food Ingredients Specialties, Inc.,* 89 Ohio St.3d 169, 729 N.E.2d 726, 732–33 (Ohio 2000) (not necessary to include membership in a protected class because both men and women are entitled to protection based on sex). Specifically, Court in *Hampel* held that a plaintiff must show: (1) the harassment was unwelcome; (2) the harassment was based on sex; (3) the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and (4) either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Id.*

depends on the employer's own acts or omissions. *Blankenship,* 123 F.3d at 873. As a result,

> when an employer responds to charges of co-worker sexual harassment, the employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known. The act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment.

*Id.* The appropriateness of an employer's response depends on the frequency and severity of the alleged harassment. *Id.* at 872 (citing *Bell v. Chesapeake & Ohio Ry.,* 929 F.2d 220 (6th Cir.1991)). A response is generally adequate if it is reasonably calculated to end the harassment. *Jackson v. Quanex Corp.,* 191 F.3d 647, 663 (6th Cir.1999).

▮ Emphasizing that the district court's discussion focused only on the stipulated facts, plaintiffs contend that the evidence, viewed in the light most favorable to them, is sufficient to create a question of fact on the issue of whether Cooper Farms may be liable for sexual harassment. In particular, plaintiffs charge that the district court ignored disputed evidence, disregarded evidence that Huston had a pattern of harassment, and made factual errors in stating that plaintiffs complained to Staugler each time there was an incident and that each incident was given consideration by Cooper Farms. Since our review is *de novo,* we need not speculate about what evidence the district court may or may not have relied upon in reaching its decision. We find that when the evidence is taken as a whole and the facts and reasonable inferences are viewed in the light most favorable to plaintiffs, there is a question of fact whether Cooper Farms's responses were indifferent or un-

reasonable in light of the facts it knew or should have known at the time.

When plaintiffs complained to Staugler, Huston already had a prior history of harassing and abusive conduct toward women. Huston had received three prior disciplinary warnings and oral counseling during the three years before plaintiffs first complained. In August 1995, Huston was counseled for verbally assaulting a coworker who asked him to get ice from a freezer. In February 1996, Huston was warned not to touch women on the buttocks and counseled that it could be considered sexual harassment. Then, in June 1997, about a year before the plaintiffs began experiencing harassment, Huston was warned not to talk to Dorothy Gilbert after she complained that he was sexually harassing her. Although Staugler was not the human resources manager at the time, written statements concerning the disciplinary action indicated that Huston had repeatedly propositioned Gilbert, touched her, and talked to other coworkers about wanting to "get into her pants."

Plaintiffs also contend that Huston's offensive and harassing behavior was so pervasive that a jury could find both that defendant had constructive knowledge of the harassment and that its responses were not reasonably calculated to end the harassment. *See Jackson,* 191 F.3d at 663–64. In support of this argument, plaintiffs rely on affidavits and statements given by other coworkers regarding allegations of other sexual comments and unwelcome touching of female coworkers by Huston. That evidence includes allegations that Huston regularly responded to coworkers by saying "suck my dick," had a history of grabbing and poking women in the buttocks and breasts, was known to make sexual comments to female coworkers, and asked more than one female coworker for a nude picture of herself. Sev-

eral women alleged that their complaints about Huston's behavior were ignored by their supervisors. In addition, Staugler received reports in January 1999 that Huston made rude and crude comments to women, had touched and rubbed up against Minnich, and had asked a female coworker for a nude picture of herself.

On the one hand, there is evidence that Staugler promptly investigated plaintiffs' complaints when they were brought to him directly, gave Huston a warning that was effective in stopping the harassment for a time, suspended and moved Huston when harassment continued, and terminated his employment (twice) for sexually offensive and harassing behavior. However, when the severity and frequency of the alleged harassment is considered in light of the facts that plaintiffs claim defendant either knew or should have known of, we find there is sufficient evidence from which a rational trier of fact could find in favor of plaintiffs on the issue of employer liability. That we find the evidence, if believed, is sufficient to survive summary judgment is not a finding regarding the issue on the merits. Further, we express no opinion concerning the other *Blankenship* requirements because the district court did not address them.

## B. Common Law Claim for Sexual Harassment

The Ohio Supreme Court recognized the common law tort of sexual harassment in *Kerans v. Porter Paint Co.,* 61 Ohio St.3d 486, 575 N.E.2d 428 (Ohio 1991), without clearly defining the elements of the cause of action. In subsequent cases interpreting *Kerans,* the Ohio courts have held the claim requires proof of the same elements necessary to establish a statutory claim for hostile work environment sexual harassment under Ohio Rev.Code § 4112.02(A). *See, e.g., Bell v. Cuyahoga Cmty. Coll.,* 129

Ohio App.3d 461, 717 N.E.2d 1189, 1193 (Ohio Ct.App.1998). In addition, *Kerans* requires that the plaintiff also present evidence suggesting a past history of sexual harassment about which the employer knew or should have known. *Id.* The district court granted summary judgment to defendant on this claim because plaintiffs could not establish employer liability as is required to prove a statutory claim for sexual harassment under Ohio law. Having found a question of fact exists on this issue, we find summary judgment should not have been granted on plaintiffs' common law sexual harassment claims.

## C. Common law Claim for Negligent Retention

Plaintiffs argue that the district court erroneously granted summary judgment to Cooper Farms on the claims of negligent retention and supervision by applying this court's incorrect interpretation of Ohio law. In *Greenberg v. Life Insurance Co. of Virginia,* 177 F.3d 507, 517–18 (6th Cir. 1999), this court interpreted the Ohio Supreme Court's decision in *Strock v. Pressnell,* 38 Ohio St.3d 207, 527 N.E.2d 1235 (Ohio 1988), to require that a plaintiff allege and prove that the employee is individually liable to the plaintiff for a tort. Following *Greenberg,* the court in *Blough v. Hawkins Market, Inc.,* 51 F.Supp.2d 858, 865 (N.D.Ohio 1999), found that claims of negligent supervision were barred in a case that also involved claims of coworker hostile environment sexual harassment. In this case, the district court relied on *Greenberg* and *Blough* and concluded that summary judgment should be granted because plaintiffs had not alleged that Huston was liable in tort; claims for sexual harassment under Title VII are made against the employer only; and claims under the Ohio statute may only result in liability for the employer or manager.

Plaintiffs challenge this court's interpretation of *Strock* and argue that to establish a claim of negligent supervision it is sufficient that the conduct upon which the claim is premised was a violation of some law or was wrongful. We begin with the brief discussion of negligent supervision found at the conclusion of the opinion in *Strock*.

> It is axiomatic that for the doctrine of *respondeat superior* to apply, an employee must be liable for a tort committed in the scope of his employment. Likewise, an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer. Because no action can be maintained against [the employee] in the instant case, it is obvious that any imputed actions against the church are also untenable.

*Strock*, 527 N.E.2d at 1244. Although the precise contours of this holding are not well-defined, other decisions from the Ohio Court of Appeals support our view that a plaintiff must be able to establish a tort claim against the individual employee in order to maintain an action for negligent supervision or retention against the employer. *See Myers v. Goodwill Indus. of Akron, Inc.*, 130 Ohio App.3d 722, 721 N.E.2d 130, 134 (Ohio Ct.App.1998) (negligent retention claim against employer failed where plaintiff could not show that the employee's conduct rose to the level of intentional infliction of emotional distress); *Campbell v. Colley*, 113 Ohio App.3d 14, 680 N.E.2d 201, 206 (Ohio Ct.App.1996) (because dispatcher could not be liable for

negligence due to statutory immunity, the employer could not be liable for his negligence).

Suggesting that the facts alleged in the complaint could support a claim for assault and battery by Huston, plaintiffs argue that an employee who fails to meet the one-year statute of limitations for bringing an assault and battery claim against a fellow employee should still be able to sue the employer for negligent supervision and retention of the employee who assaulted her. However, the Ohio Court of Appeals rejected just such a claim in the case of *Bishop v. Miller*, No. 4–97–30/31, 1998 WL 135802 (Ohio Ct.App. Mar.26, 1998). Although unpublished, it is telling that the court affirmed the grant of summary judgment on a negligent supervision claim because the sexual battery claim against the employee was barred by the applicable one-year statute of limitations. *Id.* at \*3.

▇ In this case, the district court did not err in finding plaintiffs had not alleged that Huston was liable to them in tort. The negligent retention and supervision claims rested on the charges of sexual harassment but, as the district court observed, Huston could not be found liable for sexual harassment under Title VII, *see Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997), and is not a manager or supervisor who could be liable for harassment under Ohio Rev.Code § 4112.02(A), *see Genaro v. Cent. Transp., Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782, 785 (Ohio 1999).[8]

Accordingly, we AFFIRM the decision granting summary judgment to defendant on the common law claims of negligent supervision and retention; REVERSE the entry of summary judgment in favor of

---

**8.** Ohio courts have refused to extend *Genaro* to non-supervisory employees. *See Hale v. City of Dayton*, No. 18800, 2002 WL 191588, at \*2 (Ohio Ct.App. Feb.8, 2002) (unpublished disposition); *Hoon v. Superior Tool Co.*, No. 79821, 2002 WL 93422, at \*5 (Ohio Ct.App. Jan. 24, 2002) (unpublished disposition).

defendant on plaintiffs' statutory and common law claims for hostile work environment sexual harassment; and REMAND to the district court for further proceedings consistent with this opinion.