**David MULVIN, Plaintiff,**

v.

**CITY OF SANDUSKY, et al., Defendants.**

**No. 3:02 CV 7567.**

United States District Court, N.D. Ohio, Western Division.

June 14, 2004.

---

John D. Franklin, Law Office of John D. Franklin, Tracy A. Lipinski, Law Office of John D. Franklin, Toledo, OH, for David J. Mulvin, Plaintiff.

Julie A. Harris, Calfee, Halter & Griswold, Cleveland, OH, Marc A. Fishel, Downes, Hurst & Fishel, Columbus, OH, Colleen M. O'Neil, Calfee, Halter & Griswold, Richard P. Goddard, Calfee, Halter & Griswold, Cleveland, OH, for City of Sandusky, Gerald A. Lechner, Robert Schultz, Don Icsman, City Commissioner, City of Sandusky, Ohio, Michael J. Kresser, SueAnne N. Brown, Edward L. Feick, Frank M. Fosco, John G. Ginty, William Mason, Frank M. Valli, Defendants.

## ORDER

CARR, District Judge.

This is a Title VII retaliation case in which plaintiff David Mulvin, the former

Director of Public Services for defendant City of Sandusky, alleges that the City and its employees, SuAnne Brown, Edward Feick, Frank Fosco, John Ginty, Michael Kresser, William Mason, Frank Valli, Gerald Lechner, Don Icsman, and Robert Schultz, terminated his employment in violation of Title VII and Ohio Revised Code § 4112 after he reported sexual harassment by defendant Lechner. Plaintiff also alleges state law claims for violation of Ohio public policy, negligent supervision or retention, abuse of process, tortious interference with employment relations, and civil conspiracy.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Pending is defendants' motion for summary judgment. For the following reasons, that motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff began working for the City of Sandusky, Ohio in 1987, and was promoted to the position of Director of Public Services in 1993. He served in this position until his termination in October, 2001. Plaintiff says that he received no negative performance evaluations during his employment, and that at the time of his discharge he was responsible for the supervision of several City departments and had successfully supervised several large public projects. Defendant Lechner is City Manager and was plaintiff's direct supervisor. Defendants Icsman and Schultz are City Law Director and Director of Administrative Services, respectively, and defendants Brown, Feick, Fosco, Ginty, Kresser, Mason, and Valli are former or current City Commissioners.

The events leading up to this lawsuit began in May, 2001, when Connie Nicholson began working as plaintiff's administrative secretary. Nicholson had previously worked with Lechner. During the first week of Nicholson's employment, she and Lechner hugged at a training session. A short time later, she and Lechner hugged again while Nicholson was at City Hall delivering mail. When they hugged a third time, while Nicholson was making another mail delivery, plaintiff claims that Nicholson later told him she "attempted to pull away. Despite Nicholson's resistance, Lechner pulled her in and hugged her again. It was at this point that Nicholson told Lechner she was uncomfortable with the hugging and that she would not hug him anymore." (Doc. 52, at 3).

Defendants dispute this characterization of the third hug and claim that the hugging was mutually agreeable and "friendly." (Doc. 33, at 3). Defendants claim that Lechner stopped the hugs when Nicholson told him after the third hug that they had "hugged enough." (*Id.* at 4). Defendants allege that plaintiff saw the initial hug between Lechner and Nicholson and repeatedly questioned her about the hugs in the weeks that followed; defendants further allege it was plaintiff's repeated questioning that caused Nicholson to question the appropriateness of the hugging. Plaintiff disputes defendants' assertions as to when he learned of the hugging, claiming that he knew nothing of the hugging until early July, 2001, when Nicholson told him about the incidents.

Plaintiff says that when Nicholson told him about the hugs in July, 2001, she expressed concern about them. In mid-July, plaintiff alleges that Nicholson called him to tell him that Lechner was coming to the office. According to plaintiff, Nicholson indicated that she wanted plaintiff to return so that she would not be alone when Lechner arrived. Plaintiff was not there when Lechner arrived, however, and plaintiff claims that Nicholson called him again, very concerned. At this time, plaintiff says he called Sue Skinner, a management employee who worked next door, and

asked her to talk to Lechner. He also says he advised Nicholson to leave the building, which she did. (Doc. 52, at 4).

A short time after this incident, plaintiff says that he walked by Lechner's office and heard Nicholson's voice inside; later, Nicholson told plaintiff that "she was glad [plaintiff] ... showed up at City Hall because Lechner let her go when he heard [plaintiff's] voice." (*Id.*). Plaintiff says that Nicholson reported to him that Lechner had called her several times, asked her what she was wearing, and sent her an email, the contents of which she would not show to plaintiff. (*Id.* at 4–5).

Plaintiff claims that on July 20, 2001, "Nicholson, who appeared to have been crying, came to [plaintiff] and told him that her encounter with Lechner was 'really bad today.' Nicholson proceeded to tell [plaintiff] that Lechner had kissed her, held her so tight she could feel he was sexually excited and fondled her breasts." (*Id.* at 5).

Skinner, who is not a party to this lawsuit, says that Nicholson told her that Lechner's hugs were "more than just a friendly hug," that it got to the point where Lechner put his hand underneath her shirt and rubbed Nicholson's back, and that at the time he did this they were behind his office door and she felt trapped. (Doc. 48, at 32). Skinner also told the City investigator in August, 2001 that Nicholson had told her that being alone with Lechner made Nicholson uncomfortable and that Lechner had held Nicholson so tightly she "could feel through his pants that he was excited." (Doc. 52, at 5; doc. 48 at 38–39). Skinner also says that Nicholson told her she did not want the incidents to be reported to anyone because "she could handle the situation" and she was fearful of losing her job. (Doc. 48, at 32–33, 46).

Nicholson does remember talking to Skinner about Lechner, but she claims that both plaintiff and Skinner embellished what happened to her. She admits that she hugged Lechner three times, and on the third occasion told him that she did not want to hug him anymore. She claims, however, that she was never afraid of losing her job and that she felt pressured and intimidated by plaintiff and others investigating the incidents. (Doc. 49, at 41–43).

On July 31, 2001, plaintiff reported Lechner's alleged harassment of Nicholson to defendant Icsman, the City's Law Director. According to City policy, he had an obligation as her supervisor to report the alleged harassment, regardless of whether she wanted him to report the incidents. Plaintiff alleges that shortly after he reported the harassment to Icsman, Lechner retaliated against plaintiff for the action by calling departments over which plaintiff had supervisory authority and telling them to report to Lechner, rather than to plaintiff. He also alleges that on August 14, 2001, Lechner sent him an email questioning his state of mind, accusing him of "unprofessional management practices," and threatening to reduce the number of departments over which he had supervisory control. (Doc. 52, at 8).

Plaintiff claims that the day after receiving the email, he called defendant Schultz to discuss the alleged retaliation, noting that he had never been disciplined before submitting the report about Lechner. Schultz decided to investigate the sexual harassment allegations. Schultz, assisted by a Sandusky Police Department detective, Charles Sams, attempted to question Nicholson about the allegations. Nicholson, however, refused to talk to them.

Defendants claim that Lechner sent the email to plaintiff because working with plaintiff was increasingly difficult. Lechner says that he sent the email to reprimand plaintiff for a disagreement he'd had with Lechner and Shultz. Defendants allege that plaintiff's conclusion that the

email was retaliatory is wrong because Lechner did not even know of the sexual harassment allegation at that time; that he learned of the sexual harassment allegations on August 15, 2001, when plaintiff talked to Schultz.

An outside law firm was appointed to investigate the sexual harassment claim and plaintiff's claim of retaliation. The investigation concluded that Lechner violated City policy; the City then issued to Lechner a "Notice of Counseling" for sexual harassment. The investigation also concluded that plaintiff had not suffered retaliation. Plaintiff, however, claims that the investigation report leaves out details of the investigators' interview with Nicholson and the investigators did not take his retaliation allegations seriously.

On October 10, 2001, Lechner placed plaintiff on administrative leave, allegedly telling plaintiff "he had butted heads with too many high ranking people." (Doc. 52, at 13). One week later, Lechner told plaintiff his employment with the City was terminated. Plaintiff alleges that Lechner refused to tell plaintiff why he was being terminated, and that none of the City Commissioners questioned plaintiff's termination, despite their knowledge of his sexual harassment complaint against Lechner.

Defendants claim that Lechner had several legitimate reasons to terminate plaintiff: 1) plaintiff repeatedly disregarded and did not comply with the City's drug testing policy; 2) plaintiff recommended unqualified friends for City jobs; 3) plaintiff refused to cooperate with the local AFSCME bargaining unit and its representatives; and 4) plaintiff made false accusations of sexual harassment about Lechner and harassed Nicholson, creating an intolerable working environment for her. (Doc. 33, at 6–7).

## STANDARD OF REVIEW

Summary judgement must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Services, Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be

rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

### A. Title VII Retaliation Claim

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In the instant case, plaintiff asserts that defendants have violated his rights under Title VII by taking retaliatory adverse employment action against him, in violation of § 2000e–3(a): "It shall be unlawful employment practice for an employer to discriminate against any of his employees ... because [an employee] has opposed any practice made an unlawful employment practice by this subtitle."

### 1. Individual Defendants Are Not Liable for Retaliation Under Title VII

■ It is clear that a supervisor or employee who does not otherwise qualify as an employer cannot be held personally liable under Title VII. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997). Because defendants Lechner, Iscman, Schultz, Brown, Feick, Fosco, Ginty, Kresser, Mason, and Valli, in their individual capacities, are not plaintiff's employer, they cannot be held individually liable under Title VII. Defendants' motion for summary judgment, therefore, must be granted as to the individual defendants' Title VII liability.

### 2. City of Sandusky's Title VII Liability

The only defendant against which plaintiff may pursue his Title VII claim is the City of Sandusky. To survive the motion for summary judgment, plaintiff must first establish a prima facie case against the City. To prove his prima facie case of Title VII retaliation, plaintiff must show that:

(1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by the supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir.2000).

If he establishes his prima facie case, the burden then shifts to defendants to " 'articulate some legitimate, nondiscriminatory reason' for [their] actions." *Id.* at 793 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Plaintiff must then demonstrate that " 'the proffered reason was not the true reason for the employment discrimination,' " but, rather, a pretext for discrimination. *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

#### a. Whether Plaintiff Engaged in a Protected Activity

Plaintiff claims that the City unlawfully terminated his employment after he reported that Lechner had sexual harassed Nicholson. There is no dispute that sexual harassment violates Title VII "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

The "opposition clause" of Title VII, 42 U.S.C. § 2000e–3(a), protects employees who oppose a practice that has been made unlawful under Title VII. Defendants argue that plaintiff may not premise his claim under the opposition clause because to do so he must have had a good-faith belief in the veracity of the sexual harassment allegations he made against Lechner. *See Gliatta v. Tectum, Inc.*, 211 F.Supp.2d 992, 1003 (S.D.Ohio 2002) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312–13 (6th Cir.1989)). Plaintiff did not make his complaint in good faith, defendants argue, because plaintiff made false accusations and then used the situation to excuse the problems he was having with his job and further his own personal agenda. Plaintiff, however, asserts that he believes that the allegations he made are true.

■ Defendants also claim that plaintiff's sexual harassment report was not a protected activity because employees invoking the opposition clause as the basis for their retaliation claim are generally granted less protection than those asserting other bases for their claims. *Booker*, 879 F.2d at 1312. This is such a case, defendants argue, because this is a situation "where the employee's conduct in protest of an unlawful employment practice so interfere[d] with the performance of his job that it render[ed] him ineffective in the position for which he was employed. In such a case, his conduct, or form of opposition, is not covered." *Id.* Again, however, plaintiff disputes defendants' version of what happened, saying that he did not unnecessarily press the issue or harass

Nicholson and only reported the harassment one time to the proper source. Plaintiff and defendants have a fundamental disagreement about the factual circumstances leading up to plaintiff's termination. Construing the evidence in the light most favorable to plaintiff, the court finds that if a jury believed plaintiff's testimony, and disregarded defendants', they could find that plaintiff made a good faith report of sexual harassment by a colleague, and thus was engaged in an activity protected by Title VII.

**b. Whether the Exercise of the Activity Was Known to Defendants and Whether Defendants Took Adverse Employment Action**

There is no dispute that defendants, at some point before plaintiff was terminated, knew that plaintiff had reported Lechner's alleged harassment of Nicholson to Icsman, the City Law Director, and had discussed the situation with Schultz, Director of Administrative Services. There is also no dispute that plaintiff was terminated shortly thereafter. Termination is certainly an adverse employment action. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999).

**c. Whether There is Causal Connection Between Plaintiff's Termination and the Protected Activity**

Defendants argue that there is no causal connection between plaintiff's report of sexual harassment to Icsman and his termination. Defendants claim that Lechner had several legitimate reasons to terminate plaintiff, that his conduct had been getting progressively worse, and that his response to the alleged harassment exacerbated the situation.

To establish a causal connection between his termination and the protected activity, plaintiff "must produce sufficient evidence from which an inference could be drawn

that the adverse action would not have been taken had the plaintiff not [undertaken the protected activity.]" *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). Although "no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id.*

Plaintiff argues that the temporal proximity between his sexual harassment report on July 31 and Lechner's email reprimanding him on August 14 gives rise to an inference that the email and his subsequent termination in October were retaliatory. He also claims that only a month before he made the sexual harassment report, Lechner had told him that "he was doing 'a wonderful job' and that [plaintiff] was the only department head who received compliments from the city commissioners." (Doc. 52, at 21). Furthermore, plaintiff argues, Lechner admitted that plaintiff "was the type of employee who would complete a job quickly and correctly" and "had no disciplinary documentation in his file at the time [plaintiff] was fired." (*Id.*).

Defendants claim that plaintiff had a reputation for being a heavy-handed manager and a difficult supervisor under whom to work. They claim that his behavior in the months leading up to his dismissal had grown more erratic and it became more difficult to communicate with him. In light of these facts, they argue that temporal proximity alone is not enough to establish an inference of causation.

■ Sixth Circuit cases indicate that temporal proximity alone appears to be insufficient to establish an inference of retaliation when there is a significant period of time between the protected activity and the adverse action and there are other explanations for the adverse action. *See, e.g., Ford v. General Motors Corp.*, 305 F.3d 545, 555 (6th Cir.2002) ("temporal proximity alone will not support an inference in the face of compelling evidence to the contrary.") (internal citation omitted); *Parks v. City of Chattanooga*, 74 Fed. Appx. 432, 438, 2003 WL 21674749 (6th Cir.2003) (holding that no causal connection could be inferred when two months passed between plaintiff's discrimination complaint and his termination and the discharge was "readily explainable on non-retaliatory grounds that have not been shown to be pretextual").

When, however, the proximity between protected activity and adverse employment action is "acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir.2004); *see also Gliatta v. Tectum, Inc.*, 211 F.Supp.2d 992, 1003–04 (S.D.Ohio 2002) (holding that "[a] causal link may be proven through evidence that an adverse employment action came right after the employee engaged in a protected activity").

■ In the instant case, plaintiff alleges that Lechner undertook adverse action against plaintiff very shortly after he reported the alleged harassment—plaintiff reported the harassment on July 31, and Lechner sent him the email reprimand on August 14. It is undisputed that plaintiff had no disciplinary records in his file at the time he was terminated. The parties, however, disagree about whether plaintiff's job performance was worsening and whether Lechner had other legitimate grounds for taking the action he did. These fundamental factual disagreements can only be resolved by the finder of fact. Viewing the evidence in a light most favorable to plaintiff, the temporal proximity between his sexual harassment report and

Lechner's email reprimand, request that plaintiff take administrative leave, and, finally, termination of plaintiff's fourteen year employment with the City, is "acutely near." *DiCarlo,* 358 F.3d at 421. Moreover, plaintiff supports his assertion of a causal connection with evidence that Lechner had, very shortly prior to the sexual harassment report, praised plaintiff's job performance.

Thus, I conclude that plaintiff has presented evidence sufficient to raise an inference of a causal connection between his sexual harassment report and termination.

**d. Legitimate, Non-discriminatory Reasons for Plaintiff's Termination and Evidence of Pretext**

Defendants offer several reasons for plaintiff's termination: his alleged disregard for City policies, an allegation that plaintiff recommended friends for City employment, and an allegation that plaintiff made false accusations of sexual harassment against Lechner.

■ Plaintiff claims that defendants' reasons for terminating him were articulated after the fact and were merely a pretext for discriminating against him. To establish pretext, plaintiff must show that defendants' proffered reasons: 1) had no basis in fact; 2) did not actually motivate the adverse action; or 3) were insufficient to motivate the adverse action. *Abbott v. Crown Motor Co.,* 348 F.3d 537, 542 (6th Cir.2003) (citing *Manzer v. Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)). If plaintiff "demonstrates that [defendants'] proffered, non-discriminatory reason is a pretext, then the fact finder *may* infer unlawful retaliation." *Id.* (emphasis in original).

Plaintiff asserts that he was never disciplined prior to making the sexual harassment complaint against Lechner; thus, even if he had violated City policies or improperly recommended friends or family members for City jobs, he alleges that no one at the City talked to him about or disciplined him for such action. Moreover, plaintiff and another witness, Sue Skinner, dispute defendants' claim that plaintiff made false accusations against Lechner when he reported the alleged harassment. Plaintiff's allegations are also supported by some of the findings of the law firm that investigated the alleged harassment. There is no dispute that the investigators determined that Lechner had violated the City's sexual harassment policy; though they did not ultimately find evidence supporting all of plaintiff's allegations against Lechner, they did find sufficient evidence to warrant issuing Lechner a "Notice of Counseling."

Defendants claim that the decision to fire plaintiff was Lechner's alone. They have produced no evidence other than Lechner's affidavit and deposition to support their claims. Finally, and most significantly, plaintiff asserts that at the time plaintiff was fired, Lechner articulated none of reasons set out in defendants' pleadings and evidence to explain why plaintiff was being fired. According to plaintiff, he "questioned Lechner as to the reasons for his termination and Lechner refused to answer." (Doc. 52, at 13).

■ Defendants, however, argue that even if plaintiff can establish some genuine issue of fact about whether defendants' reasons were pretextual, his claim fails because Lechner had an "honest belief" in the truth of his reasons for firing plaintiff. *See Smith v. Chrysler Corp.,* 155 F.3d 799, 807–08 (6th Cir.1998). The Sixth Circuit has adopted an "honest belief" rule that protects employers against a finding of pretext when they have a reasonable basis for taking the adverse employment action at issue: "for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its

reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* at 807.[1] If the employer is unable to make such a showing, the rule does not apply. *Id.* Even if the employer can produce some evidence establishing an honest belief, however, the protection afford by the "honest belief" rule "is not automatic." *Id.* The employer's evidence of the particularized facts that motivated its decision must be weighed against the employee's "proof to the contrary." *Id.* (citing *Fischbach v. District of Columbia Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir.1996) and noting that the court in *Fischbach* explained that "if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so").

■ The basis for Lechner's decision to fire plaintiff is not clear. Defendants have not shown that plaintiff had a history of disciplinary problems, as they attest. Instead, they rely only on Lechner's explanation, apparently given after the fact, that he fired plaintiff for violating the City's drug-testing policy, recommending friends and family for City jobs, and making false accusations about Lechner. Because Lechner is an interested party in the instant case, however, Lechner's explanation of the reasons behind plaintiff's termination are no more reliable than plaintiff's contrary explanation that Lechner had no legitimate, non-pretextual reason for firing him. Moreover, Lechner took this action very shortly after plaintiff made a sexual

harassment complaint about Lechner, plaintiff had no disciplinary records or other indications of the problems Lechner cites in his employee file, and Lechner allegedly did not discuss any potential policy violations or problems with plaintiff prior to the termination—even allegedly telling him approximately one month before plaintiff made the sexual harassment report that he was doing "a wonderful job" (Doc. 52, at 21). Together, these facts are enough to raise an inference of pretext, were the jury to believe plaintiff's testimony at trial.

■ As the Sixth Circuit explained, the "honest belief" doctrine only protects employers when they base their decision to take an adverse employment action on "particularized facts" and make an informed and reasonable decision based on those facts. *Id.* at 807–08. In the instant case, plaintiff has produced evidence that Lechner's decision was not reasonably informed, but was instead made under suspicious conditions without an explanation to plaintiff or to the City Commissioners. *See, e.g., Archer v. Mesaba Aviation, Inc.*, 210 F.3d 371, 2000 WL 376677, at *5 (6th Cir.2000) (applying *Smith* to find that the employer could not avail itself of the honest belief rule's protection because there was conflicting evidence about what facts the employer had before it when it took the employment action and plaintiff was never informed of the reasons for his termination).

---

1. I note that defendants' description of the "honest belief" rule at page 14 of their Memorandum in Support gives the rule as it is applied in the Seventh Circuit, a rule which the Sixth Circuit explicitly rejected as too broad in *Smith*. The court explained:

> The Seventh Circuit ... apparently does not require an employer to demonstrate that its belief was reasonably grounded on particularized facts that were before it at the time of the employment action. In-

stead, for the rule to apply, the employer need only provide an honest reason for firing the employee, even if that reason had no factual support .... To the extent the Seventh Circuit's application of the 'honest belief' rule credits an employer's belief without requiring that it be reasonably based on particularized facts rather than on ignorance and mythology, we reject its approach.

155 F.3d at 806.

The court cannot "blindly assume that an employer's description of its reasons is honest." *Smith,* 155 F.3d at 807. Thus, I conclude that plaintiff has produced "sufficient evidence to establish that [Lechner] failed to make a reasonably informed and considered decision before [firing plaintiff], thereby making [his] decisional process 'unworthy of credence.'" *Id.* (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089). Plaintiff has therefore presented evidence that raises a genuine issue of material fact as to whether Lechner's reasons for firing plaintiff were a pretext for discrimination.

Defendants' motion for summary judgment shall be denied as to the Title VII claim.

### B. O.R.C. § 4112 Retaliation Claim

Plaintiff's second claim asserts that defendants unlawfully retaliated against him for reporting Lechner's alleged harassment of Nicholson, in violation of § 4112 of the Ohio Revised Code. Section 4112.02(I) states that it is an unlawful discriminatory practice: "for any person to discriminate ... against any other person because that person ... has made a charge, testified, ... or participated ... in any investigation, proceeding, or hearing under sections 4112.01 or 4112.07 of the Revised Code."

### 1. Individual Liability is Available Under § 4112

■ In Ohio, supervisors and managers may be held personally liable for unlawful discriminatory acts committed in violation of § 4112. This is because § 4112.01(A)(2) contains language not found in Title VII that defines an "employer" as "'any person employing four or more persons within the state, and *any person acting directly or indirectly in the interest of an employer.'*" *Genaro v. Central Transport, Inc.,* 84 Ohio St.3d 293, 296, 703 N.E.2d 782 (1999) (emphasis in original); *see also Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 362 (6th Cir.2001) (noting that the Ohio Supreme Court's interpretation of

§ 4112 to include supervisors and managers does not apply to Title VII because the language "any person acting directly or indirectly in the interest of the employer" does not appear in Title VII).

Lechner, as plaintiff's direct supervisor, may be held liable under § 4112 for any unlawful discriminatory acts that he allegedly committed. None of the other individual defendants, however, was plaintiff's supervisor or manager, thus, they are not subject to individual liability under § 4112. *See Hale v. City of Dayton,* No. 18800, 2002 WL 191588, at *2 (Ohio App.2002) (holding that non-supervisory co-workers are not subject to individual liability under § 4112). Defendants Iscman, Schultz, Brown, Feick, Fosco, Ginty, Kresser, Mason, and Valli are entitled to summary judgment on plaintiff's § 4112 claim.

### 2. Ohio Retaliation Claim is Governed by Title VII Law

The Ohio Supreme Court has held that, in cases involving alleged violations of § 4112, courts may use federal case law interpreting Title VII as guidance. *Little Forest Med. Ctr. v. Ohio Civil Rights Comm'n,* 61 Ohio St.3d 607, 609, 575 N.E.2d 1164 (1991). Specifically, in § 4112 retaliation cases, Ohio courts apply the same analysis used for Title VII. *Chandler v. Empire Chem., Inc.,* 99 Ohio App.3d 396, 402, 650 N.E.2d 950 (1994) (citing *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 375 (6th Cir.1984)). Thus, the outcome on plaintiff's Title VII retaliation claim dictates the outcome on plaintiff's § 4112 claim. Because I held that defendants are not entitled to summary judgment on plaintiff's Title VII claim, defendants' motion for summary judgment will be denied as to defendants Lechner and the City on the § 4112 claim.

### C. Ohio Public Policy Claim

The Ohio Supreme Court has stated that "public policy warrants an exception to the

employment-at-will doctrine when an employee is discharged ... for a reason which is prohibited by statute." *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 234, 551 N.E.2d 981 (1990). The Court clarified this statement by explaining that "to state a claim of wrongful discharge in violation of public policy a plaintiff must allege facts demonstrating that the employer's act of discharging contravened a 'clear public policy.'" *Painter v. Graley,* 70 Ohio St.3d 377, 383, 639 N.E.2d 51 (1994).

To establish his claim, plaintiff must show:

1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy the *causation* element).

4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Collins v. Rizkana,* 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653 (1995). The first two elements are questions of law to be determined by the court. *Id.* at 70, 652 N.E.2d 653.

 The Ohio Supreme Court has held that workplace sexual harassment violates clear public policy. *Id.* at 73, 652 N.E.2d 653. Additionally, O.R.C. § 4112 clearly prohibits retaliation against an employee who has reported allegations of prohibited discrimination against the employer. *See, e.g., Chandler,* 99 Ohio App.3d at 402, 650 N.E.2d 950. Thus, there can be no dispute that Ohio has a clear public policy against retaliation for reporting sexual harassment

in the workplace; the clarity element is satisfied. The jeopardy element is also satisfied because plaintiff has presented evidence to support his allegations that Lechner terminated his employment as retaliation for plaintiff's report of a sexual harassment complaint against Lechner. To allow dismissals to occur under circumstances such as those plaintiff alleges clearly would contravene Ohio's public policy against retaliation for making a discrimination complaint.

 Finally, there is a genuine issue of material fact as to whether plaintiff's dismissal was motivated by conduct related to the public policy; I have already held, *supra,* that plaintiff presented evidence establishing an inference of causal connection between his sexual harassment report and his termination. The causation element is satisfied. Likewise, I held, *supra,* that although there is a genuine issue of fact as to whether Lechner had legitimate, non-discriminatory reasons for firing plaintiff, a jury could find that Lechner had no overriding justification for firing plaintiff if it believed plaintiff's testimony and did not believe Lechner's.

Defendants Lechner and the City, therefore, are not entitled to summary judgment on plaintiff's Ohio public policy claim; the other individual defendants are entitled to summary judgment on this claim.

### D. Negligent Supervision and Retention Claim

Plaintiff claims that the City of Sandusky and the individual defendants who are former or current City Commissioners owed him a duty of care as their employee, which they breached by negligently supervising and retaining Lechner, even though the Commissioners "either knew or should have known that Lechner was unlawfully retaliating against [plaintiff] by discharging him." (Doc. 52, at 31).

The elements of an action for negligent hiring, supervision, and retention are:

> (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of such incompetence, (4) the employee's act or omission causing plaintiff's injuries, and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injury.

*Linder v. Am. Nat'l Ins. Co.*, 155 Ohio App.3d 30, 39, 798 N.E.2d 1190 (2003).

Defendants argue that plaintiff's claim fails because: 1) his retaliation claim fails; 2) there is no evidence that the City Commissioners had any actual or constructive knowledge that Lechner allegedly violated the law; and 3) " 'an employee bringing a claim of negligent supervision against [his] employer is precluded from doing so by Ohio's workers' compensation scheme.' " (Doc. 33, at 18) (quoting *Blough v. Hawkins Market, Inc.*, 51 F.Supp.2d 858, 865 (N.D.Ohio 1999)).

■ Defendants' first argument is moot in light of the court's holding on the Title VII and § 4112 retaliation claims. Defendants' third argument, that plaintiff is barred from bringing this claim by Ohio's workers' compensation scheme, is also without merit. The Ohio Supreme Court has explicitly limited the application of the workers' compensation scheme:

> The workers' compensation system was not designed to resolve every dispute that arises between employers and employees. It was designed to manage the compensation of individuals who suffer physical injuries or contract occupational diseases on the job. We do not require victims of sexual harassment to proceed through the workers' compensation system. We do not require employees alleging a breach of an employment contract to use the workers' compensation system to settle the dispute. We do not require workers who have been injured as a result of intentional torts to seek redress from the workers' compensation system.

*Bunger v. Lawson Co.*, 82 Ohio St.3d 463, 465–66, 696 N.E.2d 1029 (1998). Plaintiff's retaliation claims clearly fall outside the realm of "physical injuries" or "occupational diseases." *Id.*

The court turns, therefore, to defendants' second argument.[2] Plaintiff alleges that the Commissioners should have known that Lechner acted unlawfully when he fired plaintiff because he gave no reasons to plaintiff or the Commissioners for the action and the Commissioners knew that the employment action occurred only a few weeks after plaintiff's sexual harass-

---

**2.** Neither party discusses the first two elements of a negligent supervision and retention claim—the existence of an employment relationship and the employee's incompetence—but there is no dispute that Lechner is an employee of the City or that "sexually harassing behavior is *per se* incompetent behavior." *Harmon v. GZK, Inc.*, No. 18672, 2002 WL 191598, at *16 (Ohio App. Feb. 8, 2002) (citing *Kerans v. Porter Paint Co.*, 61 Ohio St.3d 486, 575 N.E.2d 428 (1991); *Myers v. Goodwill Indust. of Akron, Inc.*, 130 Ohio App.3d 722, 721 N.E.2d 130 (1998)). The City, however, is Lechner's employer, not the individual City Commissioners, who merely act for the City in supervising Lechner's employment. Therefore, it is the City that has an employment relationship with Lechner for the purposes of first element of the negligent supervision and retention claim. *See Minnich v. Cooper Farms, Inc.*, 39 Fed. Appx. 289, 296, 2002 WL 1396910 (6th Cir. 2002) (claims under Ohio law for negligent supervision and retention are maintained against the *employer*).

It is also clear that the fourth element of the negligent supervision and retention claim is fulfilled because Lechner's act—firing plaintiff—caused plaintiff's injuries.

ment report about Lechner. There is no dispute that Lechner was cited for violating the City's sexual harassment policy—thus engaging in per se incompetent behavior, *Harmon v. GZK, Inc.,* No. 18672, 2002 WL 191598, at *16 (Ohio App. Feb. 8, 2002)—or that the Commissioners knew about that citation. Plaintiff's negligent supervision and retention claim, however, is not premised on his co-worker's alleged harassment. It is premised on an assertion that the Commissioners knew or should have known about Lechner's alleged retaliatory behavior.

■ Plaintiff points out that the Commissioners had notice of the sexual harassment complaint and knew that Lechner had been issued a "Notice of Counseling" because this information was included in the law firm's report on the matter. Therefore, he argues, the Commissioners had constructive notice that Lechner's decision to terminate plaintiff so soon after the sexual harassment complaint was retaliatory. This allegation is not sufficient to establish negligent supervision or retention because there is no allegation—let alone any evidence—that the Commissioners had notice of Lechner's retaliatory conduct *before* Lechner completed the adverse employment action.

■ Thus, even if the Commissioners can be charged, as plaintiff argues, with constructive notice that Lechner's decision to fire plaintiff was retaliatory, they cannot be charged with having known of the retaliation before plaintiff was fired. No claim of negligent supervision or retention is stated by an employer if the employer finds out about a discriminatory act *after* it has occurred. In such situation, the plaintiff's remedy is a retaliation claim, not a negligent supervision and retention claim.

Defendants' motion for summary judgment on the negligent supervision and retention claim, therefore, shall be granted as to all defendants.

## E. Abuse of Process Claim

Plaintiff claims that defendants "caused to be set in motion the termination of [plaintiff]" and that they "perverted this process for the ulterior motive of retaliating against [plaintiff.]" (Doc. 1, at 15).

In Ohio, the three elements of the tort of abuse of process are:

(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.

*Yaklevich v. Kemp, Schaeffer & Rowe Co.,* 68 Ohio St.3d 294, 298, 626 N.E.2d 115 (1994).

■ In the instant case, defendants never instituted a legal proceeding against plaintiff. Moreover, plaintiff has not opposed defendants' motion for summary judgment on this claim. Defendants' motion, therefore, will be granted as to all defendants.

## F. Tortious Interference with Employment Relations Claim

In Ohio, "an employee does not have a claim for damages for tortious interference with the employment relationship against one inside the company whose position entitles them to interfere." *Smiddy v. Kinko's, Inc.,* No. C–020222, 2003 WL 203576, at *3 (Ohio App. Jan.31, 2003). "A person in a supervisory capacity or other position of authority over the employee cannot be sued for interfering with the employment relationship that it is his duty to monitor, supervise, or enforce." *Id.* (citing *Contadino v. Tilow,* 68 Ohio App.3d 463, 467–68, 589 N.E.2d 48 (1990); *Anderson v. Minter,* 32 Ohio St.2d 207, 291 N.E.2d 457 (1972));

see also Simpson v. Bakers/Local No. 57, No. C–960517, 1998 WL 212754, at *4 (Ohio App. May 1, 1998) (claim for tortious interference with employment relations may not be maintained against an "insider" or an employee's supervisor when the act complained of is within the scope of the supervisor's duties).

■ There is no dispute that defendant Lechner had supervisory authority over plaintiff and could terminate his at-will employment at any time. Thus, Lechner was an "insider" and plaintiff's supervisor acting within the scope of his duties when he fired plaintiff. Nevertheless, plaintiff argues that Lechner's decision to terminate his employment falls outside the limitations imposed by Ohio courts, and thus constitutes a tortious interference with employment relations, because his act was retaliatory and violates Ohio and federal law. This argument is not persuasive. See Simpson, 1998 WL 212754 at *4 ("A complaint alleging that a supervisory employee maliciously induced an employer to discharge an employee under his supervision does not state a cause of action upon which relief can be granted if the supervisory employee was acting within the scope of employment duties.") (citing Tilow, 68 Ohio App.3d 463, 589 N.E.2d 48).

Defendants' motion for summary judgment on the tortious interference with employment relations claim will be granted as to all defendants.

### G. Civil Conspiracy Claim

In Ohio, a civil conspiracy consists of four elements: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." Universal Coach, Inc. v. New York City Transit Auth., Inc., 90 Ohio App.3d 284, 292, 629 N.E.2d 28 (1993). Defendants' sole argument is that because plaintiff's retaliation claims fail, so does his civil conspiracy claim. See id.

Their argument is moot, however, in light of my holding on plaintiff's retaliation claims, supra.

■ There is no doubt that a genuine issue of fact exists as to whether there is an underlying unlawful act—plaintiff's retaliation claims allege an unlawful act. There is also no doubt that plaintiff was injured by the alleged unlawful act. Plaintiff has not, however, alleged that two or more persons conspired to retaliate against him. As I explained, supra, the individual defendants may not be held liable for plaintiff's Title VII retaliation claim. The City cannot conspire with itself. Regarding plaintiff's § 4112 retaliation claim, for which both Lechner and the City may be held liable, I believe it twists the purpose of a civil conspiracy claim to argue that the City and Lechner comprise "a malicious combination of two or more persons." The City bears responsibility for the acts of its employees when they violate § 4112, but it does not follow from that proposition that the City conspired with Lechner to retaliate against plaintiff for filing a sexual harassment complaint. Because no civil conspiracy claim arises from the facts of the instant case, and because the parties have presented no arguments to the contrary, defendants' motion for summary judgment on the civil conspiracy claim shall be granted as to all defendants.

### CONCLUSION

In light of the foregoing, it is

ORDERED THAT

1) Defendants' motion for summary judgment on plaintiff's Title VII claim be, and hereby is, granted as to defendants Lechner, Icsman, Shultz, Brown, Feick, Fosco, Ginty, Kresser, Mason, and Valli and denied as to defendant City of Sandusky;

2) Defendants' motion for summary judgment on plaintiff's O.R.C. § 4112 claim be, and hereby is, granted as to defendants Icsman, Shultz, Brown, Feick, Fosco, Ginty, Kresser, Mason, and Valli and denied as to defendants Lechner and City of Sandusky;

3) Defendants' motion for summary judgment on plaintiff's Ohio public policy claim be, and hereby is, granted as to defendants Icsman, Shultz, Brown, Feick, Fosco, Ginty, Kresser, Mason, and Valli, and denied as to defendants Lechner and City of Sandusky;

4) Defendants' motion for summary judgment on plaintiff's negligent supervision and retention claim be, and hereby is, granted;

5) Defendants' motion for summary judgment on plaintiff's abuse of process claim be, and hereby is, granted;

6) Defendants' motion for summary judgment on plaintiff's tortious interference with employment relations claim be, and hereby is, granted;

7) Defendants' motion for summary judgment on plaintiff's civil conspiracy claim be, and hereby is, granted.

So ordered.